**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN GRAY, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>CITIGROUP INC., CHARLES PRINCE, THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(k) INVESTMENT COMMITTEE, and JOHN DOES 1 - 20,<br><br>      Defendants. | Civil Action No: 07 Civ. 9790 (SHS) (DCF) |
| SHAUN ROSE, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>   v.<br><br>CITIGROUP INC., CHARLES PRINCE, THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(k) INVESTMENT COMMITTEE, and JOHN DOES 1 - 10,<br><br>      Defendants. | Civil Action No: 07 Civ. 10294 (DC) |
| MEREDITH TRANBERG, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>CITIGROUP INC., CHARLES PRINCE, THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(k) INVESTMENT COMMITTEE, and JOHN DOES 1 - 20,<br><br>      Defendants. | Civil Action No: 07 Civ. 10341 (UA) |

| | |
|---|---|
| ANTON RAPPOLD, individually and on behalf of all others similarly situated,<br><br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br>CITIGROUP INC., CITIBANK, N.A.., CHARLES PRINCE, THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(k) INVESTMENT COMMITTEE, and JOHN and JANE DOES 1 - 10,<br><br><div align="center">Defendants.</div> | Civil Action No: 07 Civ. 10396 (UA) |
| SAMIER TADROS, on Behalf of All Others Similarly Situated,<br><br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br>CITIGROUP INC., CHARLES O. PRINCE, C. MICHAEL ARMSTRONG, ALAIN J.P. BELDA, GEORGE DAVID, KENNETH T. DERR, JOHN M. DEUTCH, ROBERTO HERNANDEZ RAMIREZ, ANN DIBBLE JORDAN, KLAUS KLEINFELD, ANDREW N. LIVERIS, ANNE MULCAHY, RICHARD D. PARSONS, JUDITH RODIN, ROBERT E. RUBIN, ROBERT E. RUBIN, FRANKLIN A. THOMAS, JOHN DOES 1-20 (BEING CURRENT AND FORMER MEMBERS OF THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC.) and JOHN DOES 21-40 (BEING CURRENT AND FORMER MEMBERS OF THE INVESTMENT COMMITTEE OF THE CITIGROUP INC. 401(K) PLAN),<br><br><div align="center">Defendants.</div> | Civil Action No: 07 Civ. 10442 (UA) |

| | |
|---|---|
| STEPHAN FIORINO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., CITIBANK N.A., CHARLES PRINCE, THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(k) INVESTMENT COMMITTEE, and JOHN DOES 1 - 20,<br><br>Defendants. | Civil Action No: 07 Civ. 10458 (UA) |
| JAMES BOLLA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., CITIBANK N.A., CHARLES PRINCE, THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(k) INVESTMENT COMMITTEE, and JOHN DOES 1 - 20,<br><br>Defendants. | Civil Action No: 07 Civ. 10461 (UA) |
| MARK GEROULO, individually, on behalf of the CITIGROUP 401(k) Plan, the CITIBUILDER 401 (K) PLAN FOR PUERTO RICO, and all others similarly,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP, INC., CITIBANK, N.A., THE PLAN ADMINISTRATIVE COMMITTEE OF CITIGROUP, INC., MICHAEL E. SCHLEIN, JOHN DOES 1-10, THE CITIGROUP 401(k) PLAN INVESTMENT COMMITTEE and JOHN DOES 10-20, C. MICHAEL ARMSTRONG, ALAIN J.P. BELDA, GEORGE DAVID, KENNETH T. DERR, JOHN M. DEUTCH, ROBERTO HERNANDEZ, ANN DIBBLE JORDAN, ANDREW N. LIVERIS, DUDLEY C. MECUM, ANNE M. MULCAHY, RICHARD D. PARSONS, ANDRALL E. PEARSON, CHARLES PRINCE, JUDITH RODIN, ROBERT E. RUBIN, FRANKLIN A. THOMAS, SANFORD I. WEILL,<br><br>Defendants. | Civil Action No: 07 Civ. 10472 (UA) |

## DECLARATION OF MARIAN P. ROSNER
### IN SUPPORT OF *GRAY* AND *TADROS* PLAINTIFFS' MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF LEAD PLAINTIFFS AND LEADERSHIP STRUCTURE, AND (3) ENTRY OF [PROPOSED] PRETRIAL ORDER NO. 1

I, Marian P. Rosner, declare the following under penalty of perjury of the laws of the State of New York:

1.      I am a senior partner at the law firm of Wolf Popper LLP and am one of the attorneys of record for Plaintiffs Stephan Gray, James Bolla, and the putative class members in the Citigroup ERISA Litigation.   I have served as lead counsel in complex securities class actions for over thirty years, and currently serves as a member of the provisional committee of counsel in *In Re AIG ERISA Litigation*, Master File No. 04-cv-9387 (JES) (AJP) (S.D.N.Y.).

2.      Attached hereto as **Exhibit A** are true and correct copies of excerpts from the Manual for Complex Litigation, *see Manual* §§10.22, 40.22.

3.      Attached hereto as **Exhibit B** is a true and correct copy of the order consolidating related ERISA actions in *In re WorldCom Inc. ERISA Litig.*, 02-4816 (DLC), 2002 WL 31095170 (S.D.N.Y Sept. 18, 2002).

4.      Wolf Popper LLP has identified thousands of instances of corporate fraud and breaches of fiduciary duty and maximized recoveries for investors damaged by such wrongdoings.   Since its inception, Wolf Popper has recovered billions of dollars for a wide spectrum of clients, including public institutional funds, hedge funds, employee pension trusts, labor unions, limited partnerships, corporations, private placement firms, and individuals.

5.      Wolf Popper developed and filed claims for the breaches of fiduciary duties and injuries complained of in its complaint here before any other firm, on November 5, 2007, and since then has dedicated substantial time and resources to advancing this case.   Wolf Popper's

complaint has become the model for many subsequent complaints filed in this action. The firm's attorneys and staff (including a full time private investigator, two certified public accountants, and a financial analyst) have extensively investigated Citigroup's alleged wrongdoing, reviewed relevant public records and filings, as well as media and other reports, and communicated with Citigroup's general counsel regarding the preservation of documents. In addition, as is its standard practice in ERISA cases, Wolf Popper has also requested plan documents from Citigroup pursuant to ERISA § 104(b), and submitted FOIA requests to the Securities and Exchange Commission ("SEC") and the Department of Labor ("DOL") regarding this case.

Wolf Popper has already negotiated an agreement with Defendants' counsel to provide plan documents and communicated with a number of aggrieved plan participants, in preparation for the consolidated complaint.

6.      Wolf Popper and Harwood Feffer have previously worked together in large complex class actions, and have obtained substantial recoveries for class members. Currently, Harwood Feffer and Wolf Popper are co-lead interim counsel in *In Re AIG ERISA Litigation*, Master File No. 04-cv-9387 (JES) (AJP) (S.D.N.Y.), where defendants' motions to dismiss the consolidated complaint has already been defeated *in toto*.

7.      Attached hereto as **Exhibit C** is a true and correct copy of Wolf Popper LLP's firm resume.

Dated:  November 26, 2007
        New York New York.

        Marian P. Rosner
        **WOLF POPPER LLP**

**EXHIBIT A**

# Manual for Complex Litigation, Fourth

Federal Judicial Center 2004

# Manual for Complex Litigation,
# Fourth

*Board of Editors*

Judge Stanley Marcus (Ct. of App., 11th Cir.), *chair*

Judge John G. Koeltl (S.D.N.Y.)          Judge Barefoot Sanders (N.D. Tex.)

Judge J. Frederick Motz (D. Md.)          Sheila Birnbaum, Esq. (N.Y., N.Y.)

Judge Lee H. Rosenthal (S.D. Tex.)       Frank A. Ray, Esq. (Columbus, Ohio)

Judge Fern M. Smith (N.D. Cal.),
*director, Federal Judicial Center 1999–2003*

Federal Judicial Center 2004

The *Manual for Complex Litigation, Fourth* has been produced under the auspices of the Federal Judicial Center. The analyses and recommendations are those of the *Manual*'s Board of Editors.

## 10.22  Coordination in Multiparty Litigation—Lead/Liaison Counsel and Committees

.221 Organizational Structures  24
.222 Powers and Responsibilities  26
.223 Compensation  26
.224 Court's Responsibilities  26
.225 Related Litigation  28

Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged. More often, however, the court will need to institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation. To do so, invite submissions and suggestions from all counsel and conduct an independent review (usually a hearing is advisable) to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable. Counsel designated by the court also assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel.

### 10.221  Organizational Structures

Attorneys designated by the court to act on behalf of other counsel and parties in addition to their own clients (referred to collectively as "designated counsel") generally fall into one of the following categories:

- *Liaison counsel.* Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side,

and if their functions are strictly limited to administrative matters, they need not be attorneys.[60]

- *Lead counsel.* Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

- *Trial counsel.* Serve as principal attorneys at trial for the group and organize and coordinate the work of the other attorneys on the trial team.

- *Committees of counsel.* Often called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams. Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making. The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately. Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses. See section 14.21 on controlling attorneys' fees.

The types of appointments and assignments of responsibilities will depend on many factors. The most important is achieving efficiency and economy without jeopardizing fairness to the parties. Depending on the number and complexity of different interests represented, both lead and liaison counsel may be appointed for one side, with only liaison counsel appointed for the other. One attorney or several may serve as liaison, lead, and trial counsel. The functions of lead counsel may be divided among several attorneys, but the number should not be so large as to defeat the purpose of making such appointments.

60. *See In re* San Juan Dupont Plaza Hotel Fire Litig., MDL No. 721, 1989 WL 168401, at *19–20 (D.P.R. Dec. 2, 1988) (defining duties of "liaison persons" for plaintiffs and defendants).

## 10.222 Powers and Responsibilities

The functions of lead, liaison, and trial counsel, and of each committee, should be stated in either a court order or a separate document drafted by counsel for judicial review and approval.[61] This document will inform other counsel and parties of the scope of designated counsel's authority and define responsibilities within the group. However, it is usually impractical and unwise for the court to spell out in detail the functions assigned or to specify the particular decisions that designated counsel may make unilaterally and those that require an affected party's concurrence. To avoid controversy over the interpretation of the terms of the court's appointment order, designated counsel should seek consensus among the attorneys (and any unrepresented parties) when making decisions that may have a critical impact on the litigation.

Counsel in leadership positions should keep the other attorneys in the group advised of the progress of the litigation and consult them about decisions significantly affecting their clients. Counsel must use their judgment about limits on this communication; too much communication may defeat the objectives of efficiency and economy, while too little may prejudice the interests of the parties. Communication among the various allied counsel and their respective clients should not be treated as waiving work-product protection or the attorney–client privilege, and a specific court order on this point may be helpful.[62]

## 10.223 Compensation

See section 14.215 for guidance on determining compensation and establishing terms and procedures for it early in the litigation.

## 10.224 Court's Responsibilities

Few decisions by the court in complex litigation are as difficult and sensitive as the appointment of designated counsel. There is often intense competition for appointment by the court as designated counsel, an appointment that may implicitly promise large fees and a prominent role in the litigation. Side agreements among attorneys also may have a significant effect on positions taken in the proceedings. At the same time, because appointment of designated counsel will alter the usual dynamics of client representation in important ways, attorneys will have legitimate concerns that their clients' interests be adequately represented.

---

61. *See* Sample Order *infra* section 40.22.
62. *See id.* ¶ 5.

*General Principles*                                                    *§ 10.224*

For these reasons, the judge is advised to take an active part in the decision on the appointment of counsel. Deferring to proposals by counsel without independent examination, even those that seem to have the concurrence of a majority of those affected, invites problems down the road if designated counsel turn out to be unwilling or unable to discharge their responsibilities satisfactorily or if they incur excessive costs. It is important to assess the following factors:

- qualifications, functions, organization, and compensation of designated counsel;
- whether there has been full disclosure of all agreements and understandings among counsel;
- would-be designated attorneys' competence for assignments;
- whether there are clear and satisfactory guidelines for compensation and reimbursement, and whether the arrangements for coordination among counsel are fair, reasonable, and efficient;
- whether designated counsel fairly represent the various interests in the litigation—where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests;
- the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and
- the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court—experience in similar roles in other litigation may be useful, but an attorney may have generated personal antagonisms during prior proceedings that will undermine his or her effectiveness in the present case.

Although the court should move expeditiously and avoid unnecessary delay, an evidentiary hearing may be needed to bring all relevant facts to light or to allow counsel to state their case for appointment and answer questions from the court about their qualifications (the court may call for the submission of résumés and other relevant information). Such a hearing is particularly appropriate when the court is unfamiliar with the attorneys seeking appointment. The court should inquire as to normal or anticipated billing rates, define record-keeping requirements, and establish guidelines, methods, or limitations to govern the award of fees.[63] While it may be appropriate and possibly even beneficial for several firms to divide work among themselves,[64] such an ar-

---

63. *See infra* section 14.21.
64. *See In re* Auction Houses Antitrust Litig., 197 F.R.D. 71, 77 (S.D.N.Y. 2000); *In re* Fine Paper Antitrust Litig., 751 F.2d 562, 584 (3d Cir. 1984).

rangement should be necessary, not simply the result of a bargain among the attorneys.[65]

The court's responsibilities are heightened in class action litigation, where the judge must approve counsel for the class (see section 21.27). In litigation involving both class and individual claims, class and individual counsel will need to coordinate.

### 10.225 Related Litigation

If related litigation is pending in other federal or state courts, consider the feasibility of coordination among counsel in the various cases. See sections 20.14, 20.31. Consultation with other judges may bring about the designation of common committees or of counsel and joint or parallel orders governing their function and compensation.[66] Where that is not feasible, the judge may direct counsel to coordinate with the attorneys in the other cases to reduce duplication and potential conflicts and to coordinate and share resources. In any event, the judges involved should exchange information and copies of orders that might affect proceedings in their courts. See generally section 20, multiple jurisdiction litigation.

In approaching these matters, consider also the status of the respective actions (some may be close to trial while others are in their early stages). Counsel seeking a more prominent and lucrative role may have filed actions in other courts.

## 10.23 Withdrawal and Disqualification

In view of the number and dispersion of parties and interests in complex litigation, the court should remind counsel to be alert to present or potential conflicts of interest.[67]

It is advisable to deny motions for disqualification that claim the attorney may be called as a witness if such testimony probably will not be necessary and prejudice to the client will probably be minor. Disqualification on the ground that an attorney is also a witness may sometimes be denied where it would cause "substantial hardship" to the client. This exception is generally invoked

---

65. *See, e.g., In re* Auction Houses Antitrust Litig., 197 F.R.D. 71 (S.D.N.Y. 2000); Smiley v. Sincoff, 958 F.2d 498 (2d Cir. 1992); *In re* Fine Paper Antitrust Litig., 98 F.R.D. 48 (E.D. Pa. 1983), *aff'd in part and rev'd in part*, 751 F.2d 562 (3d Cir. 1984).

66. *See infra* section 40.51.

67. *See* Model Rules of Prof'l Conduct R. 1.7–1.9 (2002); Model Code of Prof'l Responsibility DR 5-101(A), 5-104(A), 5-105(A) (1981); *see also* Model Rules of Prof'l Conduct R. 3.7 (2002); Model Code of Prof'l Responsibility DR 5-102 (1981) (lawyer as witness).

## 40.22 Responsibilities of Designated Counsel

It is ORDERED:

1.  *Plaintiffs' Lead Counsel.* Plaintiffs' lead counsel[1] shall be generally responsible for coordinating the activities of plaintiffs during pretrial proceedings and shall

    (a)  determine (after such consultation with other members of Plaintiffs' Steering Committee and other cocounsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings;

    (b)  coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(2), and 26(g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

    (c)  conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except to the extent expressly authorized;

    (d)  delegate specific tasks to other counsel or committees of counsel,[2] as authorized by the court, in a manner to ensure that pretrial preparation for the plaintiffs is conducted efficiently and effectively;

    (e)  enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

    (f)  prepare and distribute periodic status reports to the parties;

    (g)  maintain adequate time and disbursement records covering services as lead counsel;

    (h)  monitor the activities of cocounsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

    (i)  perform such other duties as may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the court.

    Counsel for plaintiffs who disagree with lead counsel (or those acting on behalf of lead counsel) or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their clients as appropriate, provided that in doing so they do not repeat arguments, questions, or actions of lead counsel.

2.  *Plaintiffs' Liaison Counsel.* Plaintiffs' liaison counsel shall

    (a)  maintain and distribute to cocounsel and to defendants' liaison counsel an up-to-date service list;

    (b)  receive and, as appropriate, distribute to cocounsel orders from the court [and documents from opposing parties and counsel];

§ 40.22                                    *Manual for Complex Litigation, Fourth*

   (c)  maintain and make available to cocounsel at reasonable hours a complete file
        of all documents served by or upon each party [except such documents as
        may be available at a document depository]; and

   (d)  establish and maintain a document depository [see section 40.261].

3.  *Plaintiffs' Steering Committee.* The other members of plaintiffs' steering committee
    shall from time to time consult with plaintiffs' lead and liaison counsel in coordi-
    nating the plaintiffs' pretrial activities and in planning for trial.

4.  *Defendants' Liaison Counsel.* Defendants' liaison counsel shall

   (a)  maintain and distribute to cocounsel and to plaintiffs' liaison counsel an up-
        to-date service list;

   (b)  receive and, as appropriate, distribute to cocounsel orders from the court
        [and documents from opposing parties and counsel];

   (c)  maintain and make available to cocounsel at reasonable hours a complete file
        of all documents served by or upon each party [except such documents as
        may be available at a document depository];

   (d)  establish and maintain a document depository [see section 40.261]; and

   (e)  call meetings of cocounsel for the purpose of coordinating discovery, presen-
        tations at pretrial conferences, and other pretrial activities.

5.  *Privileges Preserved.* No communication among plaintiffs' counsel or among de-
    fendants' counsel shall be taken as a waiver of any privilege or protection to which
    they would otherwise be entitled.


Dated: _____        _____

                                      United States District Judge

*Notes:*

   1.  In litigation involving different types of claims, such as economic injury and personal
injury claims, the court and counsel may wish to create parallel structures for the cases.

   2.  In litigation involving cases in state and federal courts, the court and counsel should con-
sider appointing a state–federal liaison committee to coordinate pretrial and trial activity, par-
ticularly discovery.

**EXHIBIT B**

Westlaw.

Not Reported in F.Supp.2d
2002 WL 31095170 (S.D.N.Y.)
**(Cite as: 2002 WL 31095170 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
In re WORLDCOM, INC. SECURITIES
LITIGATION
This Document Relates to: All Actions
Gail M. GRENIER, on behalf of a class of all others
similarly situated, and
Worldcom 401(K) Savings Plan, appearing
derivatively through Gail M. Grenier, a
participant in the Plan, Plaintiffs,
v.
WORLDCOM, INC., Bernard J. Ebbers, Scott D.
Sullivan, James C. Allen, Max E.
Bobbit, and John Does 1-100, and unknown fiduciary
defendants 1-100,
Defendants.
John T. ALEXANDER, on behalf of a class of all
others similarly situated,
Plaintiff,
v.
WORLDCOM, INC., Bernard J. Ebbers, Scott D.
Sullivan, James C. Allen, Judith
Areen, Carl J. Aycock, Max E. Bobbit, Defendants.
**No. 02 CIV. 3288(DLC), 02 CIV. 4816(DLC), 02
CIV. 5140(DLC).**

Sept. 18, 2002.

ORDER

COTE, District J.

**\*1** By Order dated August 29, 2002, this Court
ordered that the parties in the above-captioned
actions, by written submission to this Court no later
than September 13, 2002, show cause why *Grenier*
and *Alexander* should not be consolidated with each
other or both of them with *In re WorldCom, Inc.
Securities Litigation.*

On September 13, 2002, the New York State
Common Retirement Fund, which is lead plaintiff in
*In re WorldCom, Inc. Securities Litigation,* submitted
a memorandum opposing consolidation of *Grenier*
and *Alexander* with *In re WorldCom, Inc. Securities*
*Litigation,* but not opposing consolidation of *Grenier*
and *Alexander* with each other. Also on September
13, plaintiff in *Grenier* submitted on behalf of herself
and plaintiff in *Alexander* a memorandum opposing
consolidation of *Grenier* and *Alexander* with *In re
WorldCom, Inc. Securities Litigation,* and supporting
consolidation of *Grenier* and *Alexander* with each
other. Accordingly, it is hereby

ORDERED as follows:

I. CONSOLIDATION
1. No action brought pursuant to the Employee
Retirement Income Security Act of 1974, as amended
("ERISA"), 29 U.S.C. § 1001 *et seq,* in connection
with a plan established and sponsored by WorldCom,
Inc. ("WorldCom") and assigned to the undersigned
shall be consolidated with *In re WorldCom, Inc.
Securities Litigation.*

2. *Grenier* and *Alexander* are consolidated for all
purposes pursuant to Rule 42(a), Fed.R.Civ.P. They
shall be referred to collectively as In re WorldCom,
Inc. ERISA Litigation, Master File No. 02 Civ.
4816(DLC).

3. No action taken hereunder shall have the effect of
making any person, firm or corporation a party to any
action in which the person or entity has not been
named, served, or added as such in accordance with
the Federal Rules of Civil Procedure.

II. MASTER DOCKET AND SEPARATE ACTION
DOCKETS
4. A Master Docket is hereby established for the
consolidated proceedings in the actions consolidated
herein and any other actions subsequently
consolidated with them either for all purposes or for
pretrial purposes (the "Consolidated ERISA
Actions"). Entries in said Master Docket shall be
applicable to the Consolidated ERISA Actions, and
entries shall be made therein in accordance with the
regular procedures of the Clerk of this Court, except
as modified by this Order.

5. When a pleading is filed and the caption, pursuant
to this Order, shows that it is applicable to "All
Actions," the Clerk shall file such pleading in the
Master File and note such filing in the Master
Docket. No further copies need be filed nor other
docket entries made.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31095170 (S.D.N.Y.)
(Cite as: 2002 WL 31095170 (S.D.N.Y.))

### III. MASTER FILE AND SEPARATE ACTION FILES

6. A Master File is hereby established for the consolidated proceedings in the Consolidated ERISA Actions. The Master File shall be Civil Action No. 02 Civ. 4816(DLC). The original of this Order shall be filed by the Clerk in the Master File herein established. The Clerk shall maintain a separate file for each of the Consolidated ERISA Actions and filings shall be made therein in accordance with the regular procedures of the Clerk of this Court except as modified by Section II of this Order. The Clerk shall file a copy of this Order in each such separate file. The Clerk shall mail a copy of this Order to counsel of record in each of the Consolidated ERISA Actions.

### IV. NEWLY FILED OR TRANSFERRED ACTIONS

*2 7. When an ERISA action that relates to the same subject matter as the Consolidated ERISA Actions is hereafter filed in or transferred to this Court and assigned to the undersigned, it shall be consolidated with these actions in the same manner as the cases identified in Section I above (provided that any case transferred to this Court solely for pretrial proceedings shall be consolidated only to that extent absent further order of this Court), except as provided below, and the Clerk of Court shall:

a. File a copy of this Order in the separate file for such action.

b. Mail a copy of the Order of assignment to counsel for plaintiffs and counsel for each defendant in the Consolidated ERISA Actions.

c. Make an appropriate entry in the Master Docket.

d. Mail to the attorneys for the plaintiff(s) in the newly filed or transferred case a copy of this Order.

e. Upon the first appearance of any new defendant(s), mail to the attorneys for such

defendant(s) in such newly filed or transferred case a copy of this Order.

8. The Court requests the assistance of counsel in calling to the attention of the Clerk the filing or transfer of any case which might properly be consolidated with these actions.

### V. APPLICATION OF THIS ORDER TO SUBSEQUENT CASES

9. This Order shall apply to each action brought pursuant to ERISA in connection with a plan established and sponsored by WorldCom and assigned to the undersigned which is subsequently filed in or transferred to this Court, and which is assigned to the undersigned unless a party objecting to the consolidation of that action or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk mails a copy of this Order to counsel for that party. The provisions of this Order shall apply to such action pending the Court's ruling on the application.

10. Unless a plaintiff in a subsequently filed or transferred case is permitted by the Court to use a separate complaint, defendants shall not be required to answer, plead or otherwise move with respect to that complaint in any such case. If a plaintiff in any such case is permitted to use a separate complaint, each defendant shall have thirty days from the date the Court grants such permission within which to answer, plead or otherwise move with respect to any such complaint.

### VI. CAPTIONS

11. Every pleading filed in the Consolidated ERISA Actions, and in any separate action included therein, shall bear the following caption:

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ x
                                 :
IN RE WORLDCOM, INC. ERISA       :
LITIGATION                       :    MASTER FILE
                                 :    02 Civ. 4816(DLC)
                                 :
This Document Relates To:        :
                                 :
                                 :
                                 :
                                 :
_____ x
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31095170 (S.D.N.Y.)
(Cite as: 2002 WL 31095170 (S.D.N.Y.))

12. When a pleading is intended to be applicable to all actions to which this Order applies, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption. When a pleading is intended to apply only to less than all of such actions, the docket number for each individual action to which it is intended to apply and the name of the plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption.

## VII. FILING AND DOCKETING

*3 13. When a paper is filed and the caption shows that it is applicable to All Actions, the Clerk shall file it in the Master File and note such filing in the Master Docket. No other docket entries need be made nor copies filed in other files.

14. When a paper is filed and the caption shows that it is applicable to less than All Actions, the Clerk shall file the original of the paper in the Master File and a copy in the file of each separate action to which it applies and shall note such filing in the Master Docket and in the docket of each such separate action. The party filing such paper shall supply the Clerk with sufficient copies of any paper to permit compliance with this paragraph.

## VIII. SCHEDULE

15. A schedule for the filing of a consolidated amended complaint for the Consolidated ERISA Actions and any actions subsequently consolidated with them shall be set at an October 18, 2002 conference with the Court.

16. Pending filing and service of the consolidated amended complaint, defendants shall have no obligation to move, answer, or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them.

SO ORDERED:

2002 WL 31095170 (S.D.N.Y.)

**Motions, Pleadings and Filings** (Back to top)

. 2004 WL 2973886 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion Concerning Class Representation and Creation of Subclasses (Feb. 24, 2004)

. 2004 WL 2973917 (Trial Pleading) Reply Brief in Support of Certain Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of Their Amended Complaints to Their Original Timely Filed Complaints (Feb. 24, 2004)

. 2003 WL 23951686 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the Worldcom Directors (Dec. 15, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## BIOGRAPHICAL SKETCH OF WOLF POPPER LLP

Wolf Popper LLP ("Wolf Popper" or "the Firm") is a nationally recognized law firm with decades of experience in the field of securities and consumer class actions and securities derivative actions.  Since the Firm was founded in 1945, Wolf Popper has been a leader in efforts to protect the interests of defrauded investors and consumers, prosecuting hundreds of actions under federal and state laws throughout the United States.  The Firm's efforts have resulted in the recovery of billions for aggrieved parties.

The Firm also has a substantial practice in corporate and commercial law.  Wolf Popper's commercial litigation practice encompasses the representation of defendants as well as plaintiffs.  The Firm's corporate practice includes business transactions, and the law of foreign missions.  Among the Firm's clients are domestic and international individuals and businesses, and foreign missions to the United Nations.

The Firm's members have been on the faculty of the Practicing Law Institute and are active members in a variety of professional legal associations, including serving on or chairing a number of committees of such associations.  The Firm's members include graduates from the law schools of Harvard, Columbia, and New York University, and many of the Firm's members have written extensively on a variety of subjects for numerous professional associations and legal periodicals.  Many of the Firm's current and former members have held responsible positions in government both at the federal and the state level.  For example, Benedict Wolf (now deceased) was the First Secretary and Chief Trial Examiner of the National Labor Relations Board, and Martin Popper (now deceased) was a consultant to the U.S. Delegation to the Founding Conference of the United Nations and was vice-president of the Consular Law Society.

Wolf Popper has an exemplary record in its representation of plaintiffs, and the skill and experience of the attorneys at the Firm have been repeatedly recognized by Courts throughout the country.  In recognition of its high standing at the bar, Courts have frequently appointed Wolf Popper to serve as lead or co-lead counsel in complex, multi-party actions, including securities and antitrust actions.

A sample of some of the outstanding recoveries achieved by the Firm is described below.

### Securities Actions:

- In the <u>Motorola Securities Litigation</u>, 03C287 (RRP) (N.D. Ill.), Wolf Popper represented the Lead Plaintiff, the State of New Jersey, Department of Treasury, Division of Investment.  On the eve of trial, the defendants paid $190,000,000 to the class to resolve the federal securities litigation.  This recovery was obtained after more than four years of litigation. During the litigation, Wolf Popper, among other things, defeated Motorola's motion to dismiss the complaint (2004 U.S. Dist. LEXIS 18250 (Sept. 9, 2004, N.D. Ill.)) and Motorola's motions for summary judgment (2007 U.S. Dist. LEXIS 9530 (Feb. 8, 2007, N.D. Ill.)).

- In <u>Thurber v. Mattel</u>, Master File No. CV-99-10368-MRP(CWx) (C.D. Cal.) (§10(b) claims) and <u>Dusek v. Mattel</u>, Master File No. CV-99-10864-MRP(CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the <u>Dusek v. Mattel</u> §14(a) claims.  After more than three years of extremely hard-fought litigation, including two rounds of motions to dismiss, the production of millions of documents, and the taking or defending of

more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the <u>Dusek v. Mattel</u> §14(a) claims, believed to be the largest settlement of a § 14(a) case. Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result." The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the <u>Dusek</u> action and zealously represented the interests of the <u>Dusek</u> class members" and that Wolf Popper zealously performed in a "very capable and professional manner."

● Wolf Popper LLP was a co-lead settlement counsel for the plaintiff class in <u>In re Service Corporation Internat'l</u>, Civil Action No. H-99-280 (S.D. Tex.). The action alleged that defendants made material misrepresentations in connection with Service Corp.'s January 1999 stock-for-stock acquisition of Equity Corp. International. Based on the strength of the amended complaint, and presentation at mediation sessions, Wolf Popper recovered $63 million for the plaintiff class. The settlement, approved in 2004, was an extraordinary recovery inasmuch as there were no allegations of insider trading, a SEC investigation, or an accounting restatement, and the District Court had spent over four years deliberating over defendants' motion to dismiss the complaint, lessening plaintiffs' leverage in settlement negotiations.

● In <u>Stanley v. Safeskin</u>, Lead Case No. 99cv454-BTM(LSP) (S.D. Cal.), Wolf Popper served as Court-appointed Co-lead Counsel for Plaintiffs, in which the Court approved a $55 million settlement in favor of plaintiffs on March 20, 2003. The Honorable Barry T. Moskowitz thereafter complimented Plaintiffs' Co-Lead Counsel, noting his "incredible respect for the work that the lawyers did." Describing Plaintiffs' counsel as "highly skilled in these cases," Judge Moskowitz commented that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ." The Court subsequently further complimented Co-Lead Counsel, stating that "competency is too weak of a word -- the extraordinary ability of these firms * * * I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard." Paying Plaintiffs' Co-Lead Counsel perhaps an ultimate compliment, the Court further said, "From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case."

● In <u>Buxbaum v. Deutsche Bank, A.G.</u>, 98 Civ. 8460 (JGK) (S.D.N.Y.), Wolf Popper recovered $58 million as co-lead counsel in a major securities fraud action against Deutsche Bank, A.G. and its senior officer. The action alleged that Deutsche Bank defrauded Bankers Trust shareholders by misrepresenting the status of takeover negotiations for Deutsche Bank to acquire Bankers Trust. The District Court's opinion denying defendants' motion to dismiss is reported at Fed. Sec. L. Rep. (CCH) ¶90,969 (S.D.N.Y. 2000). The decision denying defendants' motion for summary judgment is reported at 2002 U.S. Dist. LEXIS 1893 (S.D.N.Y., Jan. 30, 2002). The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class' maximum possible recovery, and approximately 96% of the class' most likely recovery.

● In <u>In re Sunbeam Sec. Litig.</u>, 98-8258-Civ.-Middlebrooks (S.D. Fl.), Wolf Popper was appointed co-lead counsel. The case was brought against Sunbeam, its auditors, and former officers and directors of the company, including "Chainsaw" Al Dunlap. Plaintiffs reached a partial settlement with Sunbeam's auditors, Arthur Andersen, for $110 million - one of the largest settlements ever with an accounting firm in a securities class action - and reached a separate settlement with the individual

defendants that included more than $18 million in cash plus a separate $13 million recovery from the company's excess insurance policies.

●    In <u>In re Providian Financial Sec. Litig.</u>, MDL No. 1301 (E.D. Pa.), Wolf Popper was co-lead counsel for the plaintiff class and obtained a $38 million recovery from the defendants.  The Court, in approving the settlement in June 2002, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work, which the Court stated it had seen throughout the litigation. The Court also noted the "extremely high quality" of Wolf Popper's work is reflected in the result which it obtained and in the fact that it is a nationally prominent firm with extensive experience in the field.

●    Wolf Popper was co-lead counsel in <u>In re FTD.com, Inc. Shareholder Litig.</u>, C.A. No. 19458-NC (Del. Ch.), an action in Delaware Chancery Court that alleged that members of the board of directors of FTD.com abused their control of the company by taking FTD.com private under terms advantageous to them but not to FTD.com's public shareholders.  After mediation, co-lead counsel obtained a recovery which came to more than 99% of the damages claimed by members of the class.

●    In <u>Danis v. USN Communications, Inc.</u>, No. 98 C 7482 (N.D. Ill., May 30, 2001), the Court recently approved a settlement Wolf Popper obtained of approximately $45 million for investors, expressly thanking Plaintiffs' co-lead counsel "for all the work you have done and constructive results."

●    In an arbitration before a court appointed arbitrator in <u>Retsky Family Limited Partnership v. Price Waterhouse LLP</u>, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

●    Wolf Popper achieved a benefit of over $50 million in the settlement of the litigation over the merger of the American Stock Exchange and the NASD in <u>Philipson v. American Stock Exchange</u>, 98 Civ. 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11), in which the Court complimented the Firm for its "terrific job" in negotiating a "substantial [recovery]."

●    Wolf Popper was co-lead counsel in <u>In re Chambers Development Co. Sec. Litig.</u>, C.A. No. 92-0679 (W.D. Pa.) that resulted in a $95 million cash settlement for the class in 1996.

●    Wolf Popper was the Chair of Plaintiffs' Executive and Scheduling Committees in the consolidated litigation arising out of the national scandal at Wedtech Corporation.  <u>In re Wedtech Sec. Litig.</u>, M 21-36 (LBS) MDL 735 (S.D.N.Y.).  The action was settled in 1992 for $77.5 million, one of the then largest settlements in a securities fraud action.

●    Wolf Popper served as co-lead counsel in <u>In re Prime Motor Inns Shareholder Litig.</u>, Master File No. 90-87 (DRD) (D.N.J.).  At the conclusion of the case in 1993, Judge Debevoise complimented plaintiffs' counsel, stating, "The plaintiffs' attorneys have performed their work aggressively, skillfully and with good effect."

●    Wolf Popper served as a member of Plaintiffs' Executive Committee and as Plaintiffs' Lead Settlement Counsel in <u>In re Gulf Oil/Cities Service Tender Offer Litig.</u>, 82 Civ. 5253 (MBM) (S.D.N.Y.), where a settlement of $34 million, achieved only after the case was fully prepared for trial, was approved by the Court in May 1992.

●    Wolf Popper was the plaintiffs' co-trial counsel in <u>Bella Abzug, et ano. v. Kerkorian, et al.</u>, CA 000981, Superior Court, Los Angeles, California, which was settled during trial in October 1990 for $35 million.

- Wolf Popper was the plaintiffs' co-lead counsel in a litigation that resulted in the then largest recovery in the history of securities class actions. In <u>In re The Standard Oil Company/British Petroleum Litig.</u>, Consolidated Case No. 12676, Court of Common Pleas, Cuyahoga County, Ohio, plaintiffs' counsel negotiated and obtained a benefit for the class in excess of $600 million. In its ruling which approved in full counsels' application for attorneys' fees, the Court commented favorably on the quality of co-lead counsel:

> The professional skill required to achieve the resultant benefits to this Class has been evidenced on nearly a daily basis by this Court.

> As a result of this professional skill and excellent representation, these benefits to the Class would not have otherwise been achieved.

> The Court has fully weighed in its decision the benefits bestowed on the Class. At this juncture the Court finds that the benefit is unprecedented.

- Wolf Popper was co-lead counsel in the case producing the largest recovery in a securities class action prior to the <u>Standard Oil</u> litigation. In <u>Joseph, et al v. Shell Oil Company, et al.</u>, Consolidated Civil Action No. 7450 (Del. Ch., April 19, 1985), the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company, 482 A.2d 335, Del. Ch. 1984). In approving the $205 million recovery in the <u>Shell Oil Litigation</u>, Vice Chancellor Maurice Hartnett stated: "The results achieved in this case for the class are outstanding."

- Wolf Popper played a major role in representing the rights of shareholders in the notorious Boesky/Drexel/Milken trading scandal involving Ivan F. Boesky, Dennis B. Levine, Kidder Peabody & Co. Incorporated, Goldman, Sachs & Co., Drexel, Michael R. Milken, and others. These actions arose from the illegal use by various individuals of non-public information about publicly traded corporations, conveyed to them from high level executives at these large investment firms, to reap illicit profits for personal gain. Wolf Popper was appointed co-lead counsel in several of these actions, including the Boesky insider trading class litigation pending in the Southern District of New York, to represent classes of shareholders who suffered losses as a result of these illicit activities. <u>In re Ivan F. Boesky Sec. Litig.</u>, MDL 732, MDL-21-45-MP (S.D.N.Y.). The Firm is also one of the lead counsel in the Drexel/Milken litigation also pending in the Southern District of New York. <u>In re Drexel Burnham Lambert Group Inc., et al., Debtors</u>, 90 Civ. 6954 (MP), 90-B-10421 (FGC) (S.D.N.Y.). After intensive litigation, the Firm helped recover in excess of $800 million for investors. In the global settlement of these Milken related litigations, the Court specifically certified a worldwide class of investors after notice was given throughout the world, in addition to publications in newspapers worldwide.

- Wolf Popper was a court-appointed co-lead counsel representing a class of Salomon Brothers securities purchasers who brought an action under the federal securities laws arising out of violations of rules of the United States Department of the Treasury in connection with certain auctions of government securities, <u>In re Salomon Brothers Inc. Sec. Litig.</u>, 91 Civ. 5442 (RPP) (S.D.N.Y.). The litigation ultimately settled for over $54 million.

- The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, <u>Heckmann v. Ahmanson</u>, C.A. 000851 (Superior Court, Cal.) (co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement providing for a cash payment of $45

million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

Numerous other cases in which the Firm acted as sole lead or co-lead counsel for plaintiffs resulted in multi-million dollar settlements in favor of plaintiffs, including, for example:

- In re Grand Casinos, Inc. Sec. Litig., Master File No. 4-96-890 (JRT/RLE) (settled in August 2001; in one of the very early decisions under the Private Securities Litigation Reform Act of 1995, the court sustained various claims finding that plaintiffs met rigorous pleading standards of the then new Act, 988 F. Supp. 1270 (D. Minn. 1997));

- Jonas v. Aspec Technology, Inc., Lead Case No. CV775037 (Superior Court of the State of California, County of Santa Clara (approved in 2001);

- In re Adac Laboratories Sec. Litig., Master File No. C-98-4934-MHP;

- In re Exide Corp. Sec. Litig., 98-CV-60061-AA (E.D. Mich.)

- In re Archer Daniels Midland Co. Securities Litig., (C.D. Ill.) ($30 million recovery approved in 1997);

- In re JWP, Inc. Sec. Litig.,Master File No. 92 Civ. 5815 (S.D.N.Y.) (recovery of $36.2 million from officers, directors, and outside auditors, approved in 1996);

- Polikoff v. Eamer, Case No. BC039354 (Superior Court, Los Angeles, Cal.) ( equitable and therapeutic relief in addition to substantial damages approved  in 1996);

- PS Group Inc. Sec. Litig., Master File No. 93-2046 (C.D. Ill., October 1995) (approved in 1995);

- In re Pacific Enterprises Sec. Litig., CV920841 JSL (EEx) (C.D. Ca., March 28, 1994) ($35 million recovery approved in 1994)(where the Judge complimented plaintiffs' co-lead counsel as being "outstanding lawyers" who "could not be improved on for this kind of litigation," and "this group of lawyers merits [respect].");

- In re American Business Computers Corporation Sec. Litig., Docket No. MDL 913 (CLB) (S.D.N.Y.)

- In re McDonnell Douglas Equipment Leasing Sec. Litig., MDL No. 873 (S.D.N.Y.)(the Court described the Firm as "experienced and competent counsel");

- In re: Fleet/Norstar Sec. Litig., C.A. No. 90-0173-B (FJB)(D.R.I.);

- In re Marion Merrell Dow Inc. Sec. Litig., Master File No. 92-0609-CV-W-6 (W.D. Mo.);

- Hwang v. Smith Corona Corp., CA B 89-450 (TFGD) (D. Conn.) ($24.5 million recovery);

- Pill v. Metromedia, (Del. Ch. Court);

- Watkins v. Beatrice, (Del. Ch. Court) ($190 million recovery);

- In re International Systems & Controls Sec. Litig., MDL 440 (S.D. Tex.) (recovery for the class members of 100% of their damages);

- American Southwest Mortgage Sec. Litig., Civ. 89-462 TUC RMB (D. Az. 1992);

- Seidman v. Stauffer Chemical Co., (D.Conn.);

- Flohr v. Borman's, (S.D.N.Y.) (recovery for class members of over 90% of their damages);

- In re Elscint, Ltd. Sec. Litig., MDL 675 (D. Mass.);

- Zinberg v. Washington Bancorp, Inc., (D.N.J.) (recovery for the class members of 200% of their damages);

- In re Philips N.V. Sec. Litig., Master File 90 Civ. 3044 (RPP) (S.D.N.Y.);

- Rand v. Lorimar, 88 Civ. 3179 (LLS) (S.D.N.Y.);
- In re Jefferson Smurfit Corporation Shareholders' Litig., consolidated C.A. No. 11006 (Del. Ch.);
- In re National Education Corp. Sec. Litig., Master File No. SACV-89-405-AHS (RWRX) (C.D. Cal.);
- In re Phillips Petroleum Sec. Litig., Master File No. Misc. 85-75-MMS (D. Del.);
- Fine, et al. v. Houston Oil Trust, et al., C.A. No. H-82-551 (S.D. Tex.) (settlement of approximately $45 million);
- In re Beverly Enterprises Sec. Litig., Master File No. CV-88-01189 (RSWL) (Tx) (C.D. Cal.);
- In re Tenneco Inc. Sec. Litig., Master File No. H-912010 (S.D. Tex.) ($50 million settlement);
- In re Telerate, Inc. Shareholders Litig., Civil Action No. 1115 (consolidated) (Del. Ch.) (acquiring company required to pay $3 more per share);
- In re Henley Manufacturing Corporation Shareholders Litig., Consolidated Civil Action No. 10445 (Del. Ch.) (class recovery of $10 per share increase in tender offer price, a $26 million benefit, plus additional therapeutic benefits);
- In re Kaypro Corporation Shareholder Litig., Master File No. 84-2091 N(M) (S.D. Cal.);
- Rand v. Lorimar Telepictures Corp., 88 Civ. 3179 (LLS) (S.D.N.Y.);
- Grobow v. Dingman, Civil No. 575076 (Superior Court, Cal.) and Civil No. 87-0889 JLI (IEG) (S.D. Cal.) (settlement, comprised of monetary and equitable relief, valued by experts at in excess of $52 million, of federal and state class and derivative actions);
- In re E.F. Hutton Banking Practices Litig., MDL No. 649 (WK).
- Weinberger v. Shumway, Civil No. 547586 (Superior Court., Cal.);
- In re Saxon Sec. Litig., 82 Civ. 3103 (S.D.N.Y.);
- Rubenfeld and Polikoff v. Harte-Hanks Communications, Inc. Civil Action Nos. 7558, 7565 (Del. Ch.);
- Bacine v. Scharffenberger, C.A. 7862 (Del. Ch.);
- In re Itel Sec. Litig., C-79-2168A (N.D. Cal.) ($40 million recovery);
- In re United States Surgical Corp., (D. Conn. No. B-83-775);
- In re Digital Equipment Corporation Sec. Litig., Master File No. CA 83-3255 Y (D. Mass.).

## *Consumer Class Actions:*

Wolf Popper's strong presence in prosecuting class actions on behalf of defrauded consumers has similarly resulted in the return of millions of dollars to thousands of victims of unfair business practices. These litigations in which the Firm served as sole lead or co-lead counsel include, among others:

- In re Coordinated Title Insurance Cases, Index No.009600/03 (Sup. Ct., Nassau County, NY), a New York consumer fraud action brought against various Title Insurance Companies for their failure to charge the discounted rate for title insurance premiums in qualified refinancing transactions and their failure to provide borrowers with notice of the discount. In approving the settlement of over $31 million, one of the largest consumer class actions in the history of that court, at the hearing held on July 29, 2005, the court stated:

> And it's this Court's very strong opinion that what we have had before
> us on all sides – Plaintiffs' side, which involves two firms, and the
> Defendants, eight Defendants which involve five firms representing the
> eight different Defendants – was lawyering of the highest quality. It's
> always enjoyable for the Court to have high quality lawyering in front
> of it. It's always my opinion that it raises the level of the Bench when
> the lawyers before it proceed in a very high fashion, which has happened
> in this case.

● Sims v. First Consumers National Bank, Index No. 01/604536 (Sup. Ct., NY County), this consumer fraud action challenged the misleading disclosure of fees in fine print in connection with the issuance of the bank's credit cards. The lower court's dismissal of the action was unanimously reversed by the appellate court and the action was settled in 2005 with a recovery of 100% of the damages for the class.

● Canning v. Concord EFS, Inc., Docket No. L-6609-02 (Super. Ct., NJ, Law Division, Camden County), a consumer fraud action brought in New Jersey on behalf of recipients of certain public assistance benefits who were being illegally surcharged to access their benefits through ATM machines. The settlement, approved in May 2005, provided for a recovery of 90% of the surcharges and an injunction halting the illegal surcharging.

● Taylor v. American Bankers Insurance Group, Inc., 700 N.Y.S.2d 458 (App. Div., 1st Dept.1999), in which the Firm successfully defended against an appeal by defendants of the certification of a nationwide class on behalf of consumers who alleged that defendants had violated §§349 and 350 of the General Business Law by misleading consumers about the purchase of insurance and improperly denying insurance claims. The Firm achieved a complete recovery for class members as defendants agreed to pay class members' disputed coverage claims in full, as well as revise their solicitations to prevent a recurrence.

● Champod v. Iomega Corp., No. 98/600887 (Sup. Ct, N.Y. Cty. 1999), in which purchasers of computer storage devices alleged that the product could not read certain tapes that it was advertised as being capable of reading, and that they were improperly charged for customer assistance calls. The Firm achieved a settlement that provided a software fix to correct the problem with reading the tapes or, if not corrected, ultimately provided for a return of the product; the Firm also obtained a refund of 50% of the charges for the customer assistance calls.

● Princeton Economics Group, Inc. v. American Telephone & Telegraph Co., Civil Action No. L-91-3221 (N.J. Super. Ct. 1995), the largest class action ever brought in New Jersey State Court. The action, based upon AT&T's marketing and sales of a telephone system that it advertised as well suited to small businesses because of its "conference call" features, revealed that the phone system did not function as advertised. The participants to calls could not hear each other because the conference feature lacked amplification. This litigation resulted in a settlement valued by the Court at $85-90 million. At the conclusion of the case, the Court noted the complexity and difficulty of the issues involved and favorably commented that, "[i]f not for the skill and experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

● Tanzer v. HIP, (1997 WL 773695), in a unanimous decision obtained by the Firm, the New York Court of Appeals, New York's highest court, upheld a class action complaint on behalf of

insureds who had been denied medical insurance coverage. The Firm subsequently obtained partial summary judgment against HIP for breach of HIP's contract with its health insurance subscribers for failing to reimburse the subscribers for anesthesia-related expenses in conjunction with surgical procedures performed in New York State since June 7, 1993. <u>Tanzer v. HIP</u>, Index No. 114263-95, slip op., January 27, 1999. Ultimately, a settlement was reached which paid members of the class 100% of their damages.

- ● <u>Feinberg v. Empire Blue Cross-Blue Shield Consumer Litig.</u>, 88 Civ. 2532 (RO) (S.D.N.Y.), in which participants in a Blue Cross Blue Shield medical insurance program alleged that the program breached its contract with customers by paying subscribers amounts below the "usual and customary" rates that it represented it would pay in its contract of insurance. The action was ultimately settled with Empire agreeing to reimburse subscribers.

*Antitrust Actions*:

Wolf Popper's antitrust department has represented plaintiffs nationwide in price fixing cases and other violations of the federal antitrust laws. For example, in <u>In the Matter of the Ocean Shipping Antitrust Litig.</u>, MDL 395 (S.D.N.Y.) Wolf Popper was co-lead counsel and recovered over $50 million on behalf of transatlantic shippers of goods who brought an action against the leading carriers of containerized shipping in the United States-Europe trade for conspiracy to fix the charges made for shipping services. The Firm served as lead or co-lead counsel in numerous other antitrust class actions, including: <u>Wholesale Tobacco Distributors</u> antitrust litigation and in <u>In re Milk Antitrust Litig.</u>, 8l Civ. l963 (RO), (S.D.N.Y. l98l); <u>In re Bread Antitrust Litig.</u>, Master File No. CV-85-2013 (CPS) (E.D.N.Y.); <u>In re Shopping Carts Antitrust Litig.</u>, M.D.L. No. 451 (S.D.N.Y.); <u>In re Wiring Device Antitrust Litig.</u>, MDL 33l (E.D.N.Y.) (where Chief Judge Weinstein described counsel for the plaintiffs as "outstanding and skillful").

*ERISA Actions:*

The ERISA practice group at Wolf Popper is dedicated to protecting employee benefit plans. Our attorneys have an excellent track record pursuing ERISA claims on behalf of our clients. The Firm is currently serving as co-lead interim counsel in *In Re AIG ERISA Litigation*, Master File No. 04-cv-9387 (JES) (AJP) (S.D.N.Y.), where defendants' motions to dismiss the consolidated complaint has been defeated *in toto*. Wolf Popper's ERISA practice group also played an active role in defeating defendants' motion to dismiss in *In Re Aon ERISA Litigation*, Master File No. 04-cv-6875 (CRN) (N.D. Ill.).

*Environmental Or Health Actions*:

The Firm's strong commitment to and experience in class actions concerning environmental or health matters is demonstrated by the Firm's strong presence and important roles in several cases arising from environmental disaster and health hazards. These include, among other cases, <u>In re Exxon Valdez Oil Spill Litig.</u>, 3AN-89-2533 Civil (Sup. Ct. Alaska) and A-89-095 Civil (D. Alaska) in which the jury awarded judgment for the plaintiffs in the amount of $5 billion; <u>In re Asbestos School Litig.</u>, 83-0268 (E.D. Pa.); <u>Holifield v. BP America, Inc.</u>, CV-90-0722 RJX (C.D. Cal.); <u>In re Johns-Manville</u>

Corporation, Debtors, 82 B ll656-11676 (BRL) (Bkr. S.D.N.Y.); and Ross v. A. H. Robins, Inc., 77 Civ. l407 (CBM).

*Trial Experience*:

      One of the reasons Wolf Popper maintains a favorable, formidable reputation is because of the Firm's demonstrated willingness to prosecute cases through trial in order to achieve a favorable result for our clients.  The Firm's trial (and arbitration) experience includes, among other cases:

      ●    Zuckerman v. FoxMeyer Health Corp., 3-96-CV 2258-L (N.D. Tex. 2002), where Wolf Popper successfully prosecuted a mini-trial before a former Magistrate Judge from the N.D. Cal. in the context of an ADR Proceeding to determine a binding fair value of a settlement of the action. Notwithstanding the fact that the defendant company was on the brink of insolvency (and subsequently filed for bankruptcy), the company providing the initial layer of insurance coverage was in liquidation, and the individual defendants were not wealthy, after presentation of the evidence, the neutral arbiter determined in plaintiffs' favor.

      ●    In an arbitration before a court appointed arbitrator in Retsky Family Limited Partnership v. Price Waterhouse LLP, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

      ●    The Firm served as arbitration counsel in 1997, 1998, and 1999 in several extensive commercial arbitrations on behalf of an international airline.

      ●    Plaintiffs' co-trial counsel in Abzug, et ano. v. Kerkorian, et al., CA 000981, Superior Court, Los Angeles, California, which was settled during trial in October 1990 for $35 million.

      ●    The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (co-lead counsel for derivative actions).  There the Los Angeles Superior Court in September 1989 approved a settlement at trial providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

      ●    Citron v. E.I. duPont de Nemours & Co., Del. Ch. (Civil Action No. 6219), in Delaware Chancery Court in which the Vice-Chancellor complimented plaintiffs' counsel "for the able way in which they presented the case," their "well-done" pre-trial briefs, and the "good job" done.

      ●    Odmark v. Westside Bancorporation, Inc., No. C85-1099R (W.D. Wash.), settled mid-way through trial in Seattle, Washington.

      ●    Co-trial counsel for a plaintiff class in Kreindler v. Sambo's, 79 Civ. 4538 (WK)(S.D.N.Y.), which was settled during trial.

      ●    Co-counsel for the plaintiff class in the successful trial of Sirota v. Solitron Devices, Inc., 75 Civ. 1383 (CLB) (S.D.N.Y.), a complex securities fraud class action prosecuted under §10(b) of the Securities Exchange Act of 1934.  After an eleven-day trial, the jury brought in a verdict for the plaintiff class on all issues of liability and damages which was sustained on appeal.  See Sirota v. Solitron Devices, Inc., 673 F.2d 566 (2d Cir. 1982).

      ●    Baum v. Centronics Data Computer Corp., 85-363-L (D.N.H.), settled after trial had commenced in New Hampshire.

● The Firm also has tried several other actions on behalf of plaintiff classes in securities actions in Delaware and elsewhere.

***Court Commentary On The Firm***:

Throughout the history of the Firm, the Courts before whom Wolf Popper has appeared have commented favorably and repeatedly on the ability, expertise, and performance of the Firm and its members. A sampling of some of the praise the Firm has consistently received over the course of its practice include the following cases:

● In approving the $190,000,000 recovery for the Class in the <u>Motorola Sec. Litig.</u>, 03C287 (N.D. Ill.), where Wolf Popper represented the lead plaintiff, the Court stated as follows "You did a great very professional job here. This was a hard fought, but extremely professionally fought battle and I appreciate it. Thank you."

● In <u>Dusek v. Mattel</u>, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.), in approving the settlement of the action along with a companion action, for $122 million, the Judge, in her Findings of Fact and Conclusions of Law entered on November 6, 2003, complimented counsel saying that "Wolf Popper LLP vigorously prosecuted the <u>Dusek</u> action and zealously represented the interests of the <u>Dusek</u> Class members," and that Wolf Popper performed in a "very capable and professional manner."

● The Firm served as Co-Lead Counsel for plaintiffs in <u>Stanley v. Safeskin</u>, Lead Case No. 99cv454-BTM(LSP) (S.D. Cal.), in which the Judge noted in approving a $55 million settlement that "Plaintiffs' counsel are highly skilled in these cases" and that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ." The Honorable Barry T. Moskowitz subsequently further complimented Co-Lead Counsel at a hearing on November 20, 2003, stating:

> I think I learned more about the honorability of the firms and the competency -- and competency is too weak of a word -- the extraordinary ability of these firms in handling the cost aspects of it, and expenses aspect of it, . . .I don't think I've seen lawyers so honest with the Court . . . .I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard.
>
> \* \* \*
>
> And it's not usual that the court sees lawyers behave -- we usually see them behave well, but this is extraordinarily positive. And I wanted to make that notation. . . I can -- come out of it having incredible respect for the work that the lawyers did in this case.
>
> \* \* \*
>
> From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case.

● In approving the settlement of the <u>In re Exide Corp. Sec. Litig.</u>, Case No. 98-CV-60061-AA (E.D. Mich., Transcript of Proceedings, September 2, 1999, at 34, 35-6), the Honorable George Caram Steeh complimented the Firm for its diligence and skill, saying:

The court is satisfied indeed that the settlement that was reached in arm's length bargaining, that was undertaken only after very thorough preparation on the part of plaintiff's counsel. That the counsel itself was extremely competent and considerable experience in pursuing such matters. . . .

* * *

So the court is satisfied that the attorneys on both sides of this litigation should be commended for their effort and professionalism in developing and presenting the issues and for their common sense in arriving at the settlement as it has been presented to the court for confirmation.

● In the In re Marketspan Corporation /LILCO Shareholder Litig., Index No. 15731/98 (Sup. Ct., NY, Transcript of Proceedings, April 28, 1999, at 9), Justice Ute Wolff Lally commended the Firm when he preliminarily approved a proposed settlement, stating:

Let me first state that having had the stipulation of settlement prior to today, I have, of course, perused it at length, and I want to thank and I want to commend the executive committee and the head law firm, Wolf Popper, in adhering to the timetable which this Court has set in the various orders that have been issued and in completing the discovery and the complex negotiations in accordance with the Court's order. The court appreciates that because it was an enormously complex litigation, and I certainly commend you for reaching this agreement.

● In approving the proposed settlement of the litigation over the merger of the American Stock Exchange and the NASD, Judge Denny Chin stated in Philipson v. American Stock Exchange, 98 Civ. 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11):

I've considered the papers and what I have heard today, and I find that the settlement is fair, reasonable and adequate. . . . The recovery is substantial. There is the $30 million for the seat market program. . . . There is the potential revenue sharing, which at a reasonable estimate would be $20.7 million at least, . . . .

So the benefits of the proposed settlement are substantial. * * * I think that the benefits of the proposed settlement compare very well to any conceivable reasonable potential recovery. * * * There are very experienced and very good counsel on both sides. The negotiations were difficult and went on for quite a long time. * * * So, having considered all those factors, I conclude that the settlement is fair, reasonable and adequate and is approved.

* * *

Terrific job on both sides.

● Judge Donna F. Martinez complimented the Firm when she approved the settlement of a securities fraud action in Germano v. Cognitronics Securities Corp., Docket No. 3:93-CV-00539 (DFM) (D. Conn., Transcript of Proceedings, September 11, 1998, at 2, 3-4), stating:

Your presentations. . .were extraordinary – extraordinarily thorough and highly expert. . . .

* * *

The issues presented were complicated. They were difficult, and as we've all said more than once now, they were bitterly and expertly fought.

* * *

You've ended a long piece of litigation. I know that there was hard work involved not only in the litigation, but a lot of hard work and considerable number of hours that went into the efforts to resolve the case, and you're all to be commended for your very, very excellent representation of your respective clients.

• In a securities fraud action against Caremark International, Inc. arising out the company's failure to disclose violations of state fraud statutes, the Firm served as Co-Lead Counsel for plaintiffs and recovered $25 million on behalf of defrauded investors. The Court complimented plaintiffs' counsel on their handling of the case, stating:

Congratulations * * *I know [this case] was a complex piece of litigation. * * * thank you very much for your efforts. I think the class and the defense were very well represented.

In re Caremark International, Inc. Sec. Litig., Docket No. 94 C 4751 (Transcript of proceedings, December 15, 1997, at 7-8).

• In the investor actions arising out of the failed public offering involving In-Store Advertising in which the Firm was co-lead counsel, Judge Peter K. Leisure, in approving the settlement stated at the settlement hearing held on December 18, 1996:

Now, having reviewed the excellent work of counsel with regard to the preparation of the papers, and the research that was done, and having conducted independent research on the law, I am fully satisfied with the quality of the lawyers' work in this matter.

In re In Store Advertising Sec. Litig., Master File No. 90 Civ. 5594 (PKL) (S.D.N.Y., December 18, 1996)

• Wolf Popper was lead counsel in Carpi v. McDonnell Douglas Capital Income Fund-I, 90 Civ. 3448 (JMC) where 95% of the class damages was recovered for the class. Judge Cannella praised lead counsel in a decision dated January 21, 1994, as follows:

Plaintiffs' lead counsel has at all times demonstrated to this Court the highest caliber of representation, measurable both in quantitative terms (i.e., the benefits of the settlement to the class members), and in the professionalism, the timeliness, and the thoroughness of lead counsel's written submissions.

• Wolf Popper was co-lead counsel in investor actions brought against Valley National Bank of Arizona. Judge Robert C. Broomfield stated in approving a settlement on January 31, 1994:

I commend counsel, particularly counsel who litigated this matter, on the quality of their representation of their respective counsel. The quality of representation was very high on behalf of all parties.

Hoexter, et al. v. Simmons, et al., No. CV-89-1069-PHX-RCB (D. Az.).

• Judge James F. Holderman complimented counsel for the quality of their efforts in In re Salton/Maxim Sec. Litig., Docket No. 91 C 7693 (N.D. Ill.), in which Wolf Popper was Co-Lead Counsel, at the hearing approving the settlement and awarding counsel fees, the Court stated:

I want to not only compliment you lawyers for the professionalism that you showed in the course of reaching this compromise resolution, but I want to compliment you on the professionalism that you showed during the course of the litigation. This was a hard fought litigation. It was well briefed. The issues were presented

crisply. . . . [A]s a judge presiding over this case, it was a pleasure to preside over it because of the skill and the quality of the lawyering on everyone's part in connection with this case.

●    Judge Dickinson R. Debevoise stated at the February 3, 1993 hearing at which he approved the settlement in In re Prime Motor Inns Shareholder Litig., Master File No. 90-87 (DRD) (D.N.J.):

> The plaintiffs' attorneys have performed their work aggressively, skillfully and with good effect.  I do not detect any duplication of work....The attorneys have earned generous compensation.

●    Judge Leonard B. Sand of the Southern District of New York, in In re Wedtech Sec. Litig., 21-46 (LBS) MDL 735 (S.D.N.Y.), in approving the settlement and counsel's fee application (in which the Firm was Chair of the Plaintiffs' Executive and Scheduling Committees in the consolidated litigation), stated:

> My observation has been that this litigation has at all times been conducted at a very high-skilled professional level.  I have had no sense in this case of make-work activity or any sense that the matter was not pursued by all parties diligently but not excessively . . . .

●    In the In re Gulf Oil/Cities Service Tender Offer Litig., 82 Civ. 5253 (MBM) (S.D.N.Y.) litigation, where Wolf Popper served as Plaintiffs' Lead Settlement Counsel and as a member of Plaintiffs' Executive Committee and in which a settlement of $34 million was achieved only after the case was fully prepared for trial, the Honorable Michael B. Mukasey stated to the Wolf Popper partner in charge of the case, at a hearing held on January 3, 1992, "to the extent you have fiduciary obligations, you have discharged them magnificently in this case.  You have gotten the best settlement that you can negotiate for your client."   Judge Mukasey further stated in his Opinion and Order approving the settlement and awarding counsel fees:

> [P]laintiffs' counsel] did all the work on their own....class counsel consistently have been skillful, resourceful and diligent without also being captious -- no mean feat.  They invested time and money in this case, and well deserve the payment they request.

In re Gulf Oil/Cities Service Tender Offer Litig., Fed. Sec. L. Rep. (CCH) ¶ 96,845, at 93,391 (S.D.N.Y. 1992).

●    In the International Systems & Controls Sec. Litig., MDL 440 (S.D. Tx.) case, Judge Black stated at the conclusion of the action that the quality of the plaintiffs' lawyers was "extraordinary."  In Seidman v. Stauffer Chemical Co., B-84-543 (D. Conn.) at the conclusion of the case, Chief Judge Daly remarked, in approving the settlement, that plaintiffs' co-lead counsel had acted throughout the litigation "...in accord with the highest standards of the bar, and it was a pleasure to deal with you and to listen to you, and to review your work...".

●    Judge Nicholas H. Politan stated at the hearing approving the settlement in In re Electro-Catheter Corporation Sec. Litig., Civil No. 87-4l (D.N.J. September 7, l989), in which the Firm was co-lead counsel:

> I'm satisfied that counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation that I participated in, which was perhaps the major portion of the Court litigation here, always

well prepared, well spoken, and knew their stuff and they were a credit to their profession.  They are the top of the line.  It is good to see top-of-the-line people come in here and top-of-the-line people should be paid top-of-the-line fees.  . . . I'm very satisfied with counsel.  . . . I compliment them. . . .

• At the settlement hearing held on September 30, 1985 in <u>In re Saxon Sec. Litig.</u>, 81 Civ. 3103 (S.D.N.Y.), in which the Firm served as co-lead counsel, Judge Mary Johnson Lowe praised the quality of work performed in the case:

I have never had the pleasure of working with such an outstanding group of attorneys. . . .

* * *

We had claims which aggregated many times the value of what was available, and I think you were all just superb, and from this Court to all of the lawyers who participated you have my admiration, my thanks -- and I don't know what other accolades I can give you other than that, but that is the way I feel about what happened here, and I am very proud to be a lawyer to be associated with you.

_____

**Lester L. Levy** is the Chairman and Managing Partner of Wolf Popper LLP. He is a graduate of Columbia Law School. Mr. Levy has prosecuted hundreds of class actions and has recovered over one billion dollars for the class members he has represented. He is a recognized leader in the field of complex class action litigation and he has lectured in complex litigation at the University of Illinois and the University of Miami Law Schools.

Mr. Levy's ability to prosecute sophisticated class actions successfully has often been the subject of judicial recognition.

In <u>Buxbaum v. Deutsche Bank, A.G.</u>, 98 Civ. 8460 (JGK) (S.D.N.Y.), Mr. Levy was co-lead counsel for the class in a major securities fraud action against Deutsche Bank, A.G. that recovered $58 million on behalf of defrauded Bankers Trust shareholders.  The District Court's opinion denying defendants' motion to dismiss is reported at Fed. Sec. L. Rep. (CCH) ¶90,969 (S.D.N.Y. 2000).  The decision denying defendants' motion for summary judgment is reported at 196 F. Supp. 2d 367 (S.D.N.Y. 2002).  The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class's maximum possible recovery, and approximately 96% of the class's most likely recovery.

In <u>In re Providian Financial Securities Litigation</u>, MDL No. 1301 (E.D. Pa), Mr. Levy was co-lead counsel for  the plaintiff class and obtained a $38,000,000 judgment from the defendants. The Court, in approving the settlement in June, 2002, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work, which the Court stated it had seen throughout the litigation.

Judge James F. Holderman remarked on the quality of counsel's efforts in <u>In re Salton/Maxim Securities Litigation</u>, Docket No. 91 C 7693, (United States District Court, Northern District of Illinois), an action in which Mr. Levy was plaintiffs' co-lead counsel. At the hearing approving the settlement, the Court stated:

> I want to not only compliment you lawyers for the professionalism that you showed in the course of reaching this compromise resolution, but I want to compliment you on the professionalism that you showed during the course of the litigation. This was a hard fought litigation. It was well briefed. The issues were presented crisply. . . . [A]s a judge presiding over this case, it was a pleasure to preside over it because of the skill and the quality of the lawyering on everyone's part in connection with this case.

Mr. Levy was co-lead counsel in one of the largest class actions brought in New Jersey State Court, <u>Princeton Economics Group, Inc. v. American Telephone and Telegraph Company</u>, (N.J. Super. Ct. 1995). That case resulted in a settlement valued at $85-90 million. At the conclusion of the case, the Court noted the high level of skill possessed by class counsel and stated that... "If not for the skill and the experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

Mr. Levy was also the lead counsel in <u>In re Coordinated Title Insurance Cases</u>, Index No.009600/03 (Sup. Ct., Nassau County, NY), a New York consumer fraud action brought against various Title Insurance Companies for their failure to charge the discounted rate for title insurance premiums in qualified refinancing transactions and their failure to provide borrowers with notice of the discount.  In approving the settlement of over $31 million, one of the largest consumer class actions in the history of that court, at the hearing held on July 29, 2005, the court stated:

> And it's this Court's very strong opinion that what we have had
> before us on all sides – Plaintiffs' side, which involves two firms, and
> the Defendants, eight Defendants which involve five firms
> representing the eight different Defendants – was lawyering of the
> highest quality.  It's always enjoyable for the Court to have high
> quality lawyering in front of it.  It's always my opinion that it raises
> the level of the Bench when the lawyers before it proceed in a very
> high fashion, which has happened in this case.

Mr. Levy also headed the class action litigation in the State of New York against American Bankers Ins. Group Inc. He obtained a nationwide class [Taylor v. American Bankers Ins. Group Inc., 700 N.Y. S. 2d 458 (1st Dept. 1999)] and achieved a complete recovery for class members as the defendant agreed to pay the class members' disputed coverage claims in full. The defendant also agreed to revise its solicitations to prevent a recurrence.

Mr. Levy was plaintiffs' co-lead counsel in Seidman v. Stauffer Chemical Co., B-84-543 (United States District Court, District of Connecticut) where at the successful conclusion of the case, Chief Judge Daly remarked that plaintiffs' co-lead counsel had acted throughout the litigation "...in accord with the highest standards of the bar, and it was a pleasure to deal with you and to listen to you, and to review your work...".

Mr. Levy played a leading role in the landmark Joseph v. Shell Oil Litigation, wherein the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company. At the conclusion of the litigation, which resulted in a $205,000,000 recovery for the class, the Court said that "the results achieved in this case for the class are outstanding".

In In re Fidelity Medical, Inc. Securities Litigation, 92-1908 (United States District Court, District of New Jersey), where Mr. Levy was a member of plaintiffs' Executive Committee that prosecuted the case, the Court at the conclusion of the case complemented counsel for their skill and professionalism and thanked them for the way the litigation was conducted.

The periodical, *Securities Class Action Alert*, noted in reporting on the Borman's Inc. class action, wherein Mr. Levy was the Class Counsel:

> Lester Levy of Wolf Popper Ross Wolf & Jones made short work of
> this case by winning a quick handsome return for shareholders. In one
> of the highest payout ratios in recent memory, eligible investors
> recovered 93% of the money they were deprived of. Levy obtained
> the settlement in just 15 months and investors received their checks
> within 6 months after the claim deadline date!

Securities Class Action Alert, p.60 (April 1991).

Other important class actions, wherein Mr. Levy was either lead counsel or co-lead counsel include:

In re Archer Daniels Midland Co. Securities Litigation, United States District Court, Central District of Illinois ($30 million recovery for the class);

Hwang v. Smith Corona Corp., et al, United States District Court, District Court of Connecticut ($24.5 million recovery for the class);

Watkins v. Beatrice, Delaware Chancery Court ($190 million recovery for class);

In re Adac Securities Litigation, (United States District Court, Northern District of Calif.) (recovery of approximately $20 million for the Class);

In re Caremark Securities Litigation, United States District Court, Northern District of Illinois (recovery of $25 million for the class); and

Zinberg v. Washington Bancorp, Inc., (United States District Court, District New Jersey) (recovery for the class members of 200% of their damages).

Mr. Levy is co-lead counsel for the State of New Jersey, which was appointed lead plaintiff in Motorola Securities Fraud Class Action. In this major securities fraud litigation pending in the United States District Court for the Northern District of Illinois, Defendant Motorola's motion to dismiss the Complaint has been denied and class action certification has been granted.

In 1997, Mr. Levy argued before the New York Court of Appeals in Tanzer v. Health Insurance Plan of Greater New York, 91 N.Y.2d 850, 1997 WL 773695 (Dec. 17, 1997) and won a unanimous decision upholding a class action complaint on behalf of insureds who had been denied medical insurance coverage. Thereafter, the Class received 100% of their damages.

Mr. Levy is co-lead counsel for the State of New Jersey, which was appointed lead plaintiff in Motorola Securities Fraud Class Action. In this major securities fraud litigation pending in the United States District Court for the Northern District of Illinois, Defendant Motorola's motion to dismiss the Complaint has been denied and class action certification has been granted.

Mr. Levy serves as an arbitrator for the United States District Court for the Eastern District of New York. Mr. Levy is also active in charitable work. He has received the Lifetime Trustee Award from the National Multiple Sclerosis Society for "outstanding service to the MS community."

**Robert M. Kornreich**, a senior partner of the Firm, is a graduate of Columbia College (B.A.), the School of Law of the State University of New York at Buffalo (1967, LL.B. -- member of the Buffalo Law Review) and New York University School of Law (LL.M.). Following law school, he joined the Firm where he has concentrated in the area of securities class and derivative litigation. He has been a senior member of the Firm since February 1984 and has been a partner since 1979.

Mr. Kornreich has been lead or co-lead counsel in numerous successful securities class action cases. For example:

- He was co-lead counsel for plaintiffs in the class action entitled In re Digital Equipment Securities Litigation, CA 83-3255-Y (D. Mass.), in which a settlement of $9 million was achieved.

- He was co-lead counsel in the class actions entitled In re McDonnell Douglas Equipment Leasing Securities Litigation, MDL No. 873 (S.D.N.Y.) which was settled with cash benefits to the classes in excess of $16,000,000.

- He was co-lead counsel in In Re JWP Securities Litigation, Master File No. 92 Civ. 5815 (WCC) (S.D.N.Y.), a securities class action which was settled in 1997 for approximately $36,000,000.

He has argued appeals in many jurisdictions, including the New York Court of Appeals, as well as, the D.C. Circuit, the Eleventh Circuit and the Sixth Circuit. His notable appellate decisions include Barr v. Wackman, 36 N.Y. 2d 371 (1975); Lipton v. Documation, 734 F.2d 740 (11th Cir. 1984), and In re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d 630 (D.C. Cir. 1992).

Mr. Kornreich was sole lead or co-lead counsel in the following notable recent class or derivative action cases:

- In re Service Corporation Int'l., C.A. No. H-99-280 (S.D. Tex.), class action settlement in 2004 for $63 million;

- In re FTD.com, Inc. Shareholders Litigation, C.A. No. 19458 (Del. Ch.) class action settlement in 2003 for $10.7 million in increased merger consideration;

- In re Sunbeam Securities Litigation, 98-8258-Civ. Middlebrooks (S.D. Fla.), class action settlement for $110 million with outside auditor, the second largest class recovery against a public auditor, plus additional settlements of $31 million;

- Berke v. Presstek, Inc., Civ. No. 96-347-M (D.N.H.), class action settlement for $22 million in stock;

- In re TCW/DW American Government Income Trust Securities Litigation, 95 Civ. 0167 (PKL) (S.D.N.Y.), class action settlement for $30 million;

- Retsky Family Limited Partnership v. Price Waterhouse LLP, 97 C 7694 (N.D. Ill.) class settlement for $14 million after trial by award of arbitrator;

- In Re Triarc Companies, Inc. Class and Derivative Litigation, 15746 (Del. Ch.), class and derivative settlement for $11 million in economic benefits.

Mr. Kornreich is a recognized leader in the field of securities litigation and has served as Chair of the Committee on Securities and Exchanges of the New York County Lawyers' Association from 1993 to 1997.

**Marian P. Rosner** is a senior partner in Wolf Popper LLP, ("Wolf Popper" or "the Firm"). She is the co-chair of the Firm's securities litigation department and also serves as a member of the Executive Committee.  Ms. Rosner is a graduate of New York University (B.A., 1970) and from Brooklyn Law School (J.D., 1973).  She served as an Assistant Corporation Counsel for the City of New York Law Department, General Litigation Division, before joining Wolf Popper in 1976.

Ms. Rosner has litigated securities class actions for over thirty (30) years and is a recognized leader in her field. The securities actions Ms. Rosner has litigated both prior to and subsequent to the enactment of the Private Securities Law Reform Act ("PSLRA")  have involved complex securities litigation involving accountants, underwriters, law firms, venture capital defendants, as well as complicated issues related to bankruptcies, insurance policies and other related issues.  Many of Ms. Rosner's cases have been litigated intensely until the eve of the trial and have settled for substantial recoveries as a percentage of damages.  Ms. Rosner is one of the few women lawyers at the top of her field and has recovered close to a billion dollars for her clients.  Ms. Rosner is the chief attorney at the Firm in charge of the Firm's representation of its institutional clients which include the States of Mississippi, Georgia, Ohio, New York City, New Jersey, Pennsylvania, Washington, Vermont, City of San Francisco, the Amalgamated Bank and

others. Because of her knowledge and skills, Ms. Rosner is regularly asked to lecture before numerous panels on continuing legal education described below.  Following is a sample of the major class actions Ms. Rosner has successfully litigated.

● In one of the first cases where Ms. Rosner served as co-lead counsel in In re Saxon Sec. Litig., 82 Civ. 3103 (S.D.N.Y.), Ms. Rosner achieved a $20 million settlement for the shareholders. The class action was coordinated with litigation brought on behalf of trade creditors, banks and other claimants who received additional recoveries from a global settlement. At the conclusion of the case, the late Judge Mary Johnson has stated "I have never had the pleasure of working with such an outstanding group of attorneys. . . .  We had claims which aggregated many times the value of what was available, and I think you were all just superb, and from this Court to all of the lawyers who participated you have my admiration, my thanks -- and I don't know what other accolades I can give you other than that, but that is the way I feel about what happened here, and I am very proud to be a lawyer to be associated with you."

● In In re Cephalon Securities Litigation, 96 CV-0633 (E.D. Pa.), Ms. Rosner brought the first securities case filed under the PSLRA, on behalf of an institutional investor.  A $17 million settlement was obtained in a complex action against a biotechnology company accused of misrepresenting test results of a Phase III clinical study of a drug to treat ALS patients.  In addition to successfully litigating the motion to dismiss (1997 WL 570918 (E.D. Pa. Aug. 29, 1997)), a precedent-setting decision regarding class certification was obtained for a class broadly defined to include short sellers and option traders (Fed. Sec. L. Rep. ¶ 90,268 (E.D. Pa. Aug. 12, 1998).

● In Thurber v. Mattel, Master File No. CV-99-10368-MRP(CWx) (C.D. Cal.) (§10(b) claims) and Dusek v. Mattel, Master File No. CV-99-10864-MRP(CWx) (C.D. Cal.) (§14(a) claims), which were consolidated, Ms. Rosner handled the prosecution of the Dusek v. Mattel 14(a) claims.  After more than three years of extremely hard-fought litigation, including the production of millions of documents and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the Dusek v. Mattel §14(a) claims, believed to be the largest settlement of a §14(a) case. Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result." The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek class members." The settlement was affirmed on appeal.

● In Middlesex Retirement System v. Quest Software, Inc., No. 06-06863-DOC(RNBx) (C.D. Cal.), Ms. Rosner was appointed lead counsel in a federal securities class action against Quest Software, Inc. ("Quest"), a company that designs, develops, distributes and supports software products.  The case is based on allegations that Quest issued materially false and misleading statements to cover up its failure to account properly for backdated stock options, causing Quest's operating and net income to be overstated and its stock price to be artificially inflated.  Following comprehensive briefing opposing defendants' motion to dismiss, the Court on October 22, 2007, denied virtually all of defendants' motion.  The litigation is proceeding.

● Ms. Rosner is representing Public Employees' Retirement System of Mississippi in its motion to join with the Arkansas Teacher Retirement System, Fire & Police Pension Association of Colorado and Louisiana Municipal Police Employees' Retirement System in their motion for consolidation of the derivative actions filed on behalf of Countrywide Financial Corporation and

motion for lead plaintiff in the consolidated actions.  The complaints filed were brought derivatively on behalf of nominal defendant Countrywide, against the members of its board of directors in connection with an extensive pattern of misconduct and complete abandonment of regard for their fiduciary duties, including lack of good faith and lack of due care and oversight of Countrywide's lending practices, financial reporting, and internal controls, as well as the sale by certain of the Company's officers and directors of over $780 million of Countrywide stock at inflated prices, while in possession of material inside information, between 2004 and 2007.

●    Ms. Rosner had primary responsibility for Wolf Popper's representation as Special Advisory Counsel to the State of Wisconsin Investment Board in the <u>Anicom</u> litigation (<u>In re Anicom Inc. Sec. Litig.</u> 00-C-4391 (N.D. Ill.)). Wolf Popper conducted the investigation of plaintiffs' claims, including extensive interviews of Anicom's former employees and customers, and prepared the initial Amended Complaint.  That complaint was sustained by the District Court, leading to a global settlement, including a substantial contribution from individual defendants, of $40 million on behalf of all claimants.

●    Ms. Rosner has been appointed as one of four counsel to represent the plaintiffs in the <u>In re AIG ERISA Litigation</u>, No. 04 Civ. 9387 (JES), arising out of the accounting scandal at AIG International.

●     In a  precedent setting decision, under the PSLRA, Ms. Rosner obtained an order from the court granting discovery notwithstanding an anticipated motion to dismiss by the defendants. [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,112 (D. Mass. 1997) and successfully defended against defendants' motion to dismiss (182 F.R.D. 364 (D. Mass. 1998). <u>In re WebSecure, Inc. Securities Litigation</u>, 97-10662-GAO (D. Mass.), a substantial recovery was obtained for the class, in spite of the bankruptcy of the corporate defendant.

●    Ms. Rosner achieved a benefit of over $50 million in the settlement of the litigation over the merger of the American Stock Exchange and the NASD in <u>Philipson v. American Stock Exchange</u>, 98 Civ 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11), in which the Court complimented the Firm for its "terrific job" in negotiating a "substantial [recovery]."

●    On the eve of trial, Ms. Rosner obtained $44.7 million dollars for the class  in <u>Danis v. USN Communications, Inc.,</u> 98 C 7412 (N.D. Ill.)    The settlement returned to class members 36% of maximum provable damages in a case where USN was bankrupt and the recovery was obtained against venture capital defendants, insurance covering its members who sat on USN's Board and Merrill Lynch.  The court's decision denying defendants' motion to dismiss is reported at 73 F. Supp. 2d 923 (N.D. Ill. 1999).

●    Ms. Rosner was co-lead counsel in <u>In re Chambers Development Co. Sec. Litig.</u>, C.A. No. 92-0679 (W.D. Pa.), a case that resulted in a $95 million dollar cash settlement for the class in 1996, then one of the largest class action settlements, and a substantial personal contribution to the settlement from the individual defendants.

●    Ms. Rosner was the sole Chair of Plaintiffs' Executive and Scheduling Committees in the consolidated litigation arising out of the Wedtech Corporation scandal, <u>Wedtech Sec. Litig.</u>, M 21-36 (LBS) MDL 735 (S.D.N.Y.).  The case was litigated for close to six (6) years and was not settled until the eve of the trial. Both institutional and private investors brought individual actions along with the class actions and participated in the $77.5 million settlement, then a record settlement in the Southern District of New York.   Despite Wedtech's bankruptcy, the class was

able to recover 67% of its losses from law firms, underwriters, public accounting firms and limited insurance. Judge Leonard B. Sand stated at the settlement hearing that "My observation has been that this litigation has at all times been conducted at a very high-skilled professional level."

Ms. Rosner is a former member of the Federal Courts, Corporation Law, and Securities Regulation Committees of the Bar Association of the City of New York. She has written and lectured widely on issues involving securities litigation and accountants' liability and has served on the following panels:

(1)    CityBar Center for Continuing Legal Education, The Association of the Bar of the City of New York (New York City Bar Association) "Securities Litigation Current Developments and Strategies", February 2, 2006;

(2)    CityBar Center for Continuing Legal Education, The Association of the Bar of the City of New York, (New York City Bar Association) "Prosecuting Securities Class Actions & Derivative Suits", May 13, 2004;

(3)    Practicing Law Institute ("PLI") on "Accountants' Liability After Enron", May 20-21, 2002;

(4)    Practicing Law Institute ("PLI") Securities Seminar 1998, 1999, 2000;

(5)    May 8, 2001 and April 25, 2002 New York City Bar Association Seminar on Securities Litigation;

(6)    Professional Liability Underwriting Society, "D&O Liability & Insurance Issues Symposium" (January 22-23, 1998);

(7)    ALI-ABA Post Graduate Course in Federal Securities Law: "The Aftermath of Securities Litigation Reform" (July 22-24, 1997);

(8)    PLI seminar on Sweeping Reform: Litigating & Bespeaking Caution Under the New Securities Law (1996);

(9)    PLI 28th Annual Institute on Securities Regulation (1996);

(10)   Federal Bar Council Roundtable: "Private Securities Litigation, A New Life Form Emerges" (October 23, 1996);

(11)   PLI seminar on Accountants' Liability (1988, 1993 and 1994);

(12)   Federal Bar Council Roundtable: Ethics and Professionalism in Witness Preparation and Depositions (March 22, 1994);

(13)   American Bar Association 1993 summer meeting on the subject of RICO claims against accountants after the Supreme Court decision in Reeves v. Ernst & Young (1993);

(14)   April 11, 2002 City Bar Center for Continuing Legal Education, Women in Negotiation: Practical Tips to Strengthen Your Negotiation Skills (For You & Your Clients).

Ms. Rosner is a member of the Board of Editors of the Securities Reform Act Litigation Reporter and the Arbitration Panel of the Eastern District of New York.

**Patricia I. Avery** is a senior partner of Wolf Popper LLP. She holds a B.A. from New York University (1973) and is a graduate of New York University School of Law (J.D., 1976), where she was a staff member and then an editor of the Moot Court Board.  Since graduation from NYU, she has concentrated on securities and other complex civil litigation, including consumer fraud, antitrust, qui tam, and environmental.  Ms. Avery has had sole or major responsibilities for many leading decisions in the securities field and in the general area of Federal Civil Procedure.

Since joining Wolf Popper in 1982, Ms. Avery has been involved principally in securities (both derivative and class action), consumer fraud, and antitrust litigation.  In addition to playing major roles in many of the leading decisions and substantial judgments obtained by the Firm over the years, she has had sole or principal responsibility at the Firm for numerous securities, consumer, and other class action cases in which the Firm was appointed lead or co-lead counsel for plaintiffs, including, among many others:

- Thurber v. Mattel, Master File No. CV-99-10368-MRP(CWx) (C.D. Cal.) (§10(b) claims) and Dusek v. Mattel, Master File No. CV-99-10864-MRP(CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the Dusek v. Mattel §14(a) claims. After more than three years of extremely hard-fought litigation, including two rounds of motions to dismiss, the production of millions of documents, and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the Dusek v. Mattel §14(a) claims, believed to be the largest settlement of a §14(a) case.  Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result."  The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek class members" and that Wolf Popper zealously performed in a "very capable and professional manner."

- Stanley v. Safeskin, Lead Case No. 99cv454-BTM(LSP)(Consolidated) ($55 million settlement approved by the Court in March 2003, in which the Court complimented plaintiffs' co-lead counsel for their work, noting that plaintiffs' co-lead counsel "vigorously" and "diligently" prosecuted the case and "procured an exceptional award for the class," and that they had a "great deal of experience in class action litigation" and are "highly regarded in this area of the law."  The Honorable Barry T. Moskowitz complimented Plaintiffs' Co-Lead Counsel in this case, handled by Ms. Avery on behalf of Wolf Popper, noting his "incredible respect for the work that the lawyers did."  Describing Plaintiffs' counsel as "highly skilled in these cases," Judge Moskowitz commented that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ."  The Court subsequently further complimented Co-Lead Counsel, stating that "competency is too weak of a word -- the extraordinary ability of these firms * * * I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard."  Paying Plaintiffs' Co-Lead Counsel perhaps an ultimate compliment, the Court further said, "From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much

higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case."

- Bell v. New Horizons Worldwide, Inc., Case No. BC 289898 (Complex Litigation Program) (Superior Court of the State of California, County of Los Angeles) (innovative settlement on behalf of a nationwide class of consumers who had purchased technical training courses from Computer Learning Centers approved in September 2004);

- In re Grand Casinos, Inc. Sec. Litig., Master File No. 4-96-890 (JRT/RLE) (settlement approved in August 2001, one of the very early decisions sustaining various claims brought under the Private Securities Litigation Reform Act of 1995, finding that plaintiffs met the rigorous pleading standards of the then new Act, 988 F. Supp. 1270 (D. Minn. 1997));

- Jonas v. Aspec Technology, Inc., Lead Case No. CV775037 (Superior Court of the State of California, County of Santa Clara);

- In re Adac Laboratories Sec. Litig., Master File No. C-98-4934-MHP (settlement of $20 million in 2000);

- In re Community Psychiatric Centers Sec. Litig., SA CV-91-533-AHS (Eex) (C.D. Cal.);

- McGann v. Ernst & Young, SA CV-93-0814-AHS (Eex) (C.D. Cal.) (total class recovery of $54.5 million against company and its outside auditors);

- Polikoff v. Eamer, Case No. BC039354 (Superior Court, Los Angeles, Cal.);

- PS Group Inc. Sec. Litig., Master File No. 93-2046 (C.D. Ill., October 1995);

- In re Pacific Enterprises Sec. Litig., CV920841 JSL (EEx) (C.D. Ca., March 28, 1994) (settlement of $35 million--where the Judge complimented plaintiffs' co-lead counsel as being "outstanding lawyers" who "could not be improved on for this kind of litigation," and "this group of lawyers merits it [respect].");

- Abzug, et ano. v. Kerkorian, et al., CA 000981 (Superior Court, Los Angeles, Cal.) (in which Ms. Avery was co-trial counsel in an action settled in 1990 during trial for $35 million);

- In re American Southwest Mortgage Sec. Litig., Civ. 89-462 TUC RMB (D. Az. 1992);

- Grobow v. Dingman, Civil No. 575076 (Superior Court, San Diego, Cal.) and Civil No. 87-0889 JLI (IEG) (S.D. Cal.) (settlement comprised of monetary and equitable relief valued by experts at in excess of $52 million); and

- Weinberger v. Shumway, Civil No. 547586 (Superior Court., Cal.) (derivative settlement comprised of damages and equitable relief valued at in excess of $20 million).

Ms. Avery also has significant trial experience, serving as trial or co-trial counsel in numerous cases. Ms. Avery was the sole lead trial counsel in the defense of a $100 million arbitration on behalf of an international airline that was in arbitration hearings in 1998-1999,

successfully reducing damages 99% before settlement.  She was also co-trial counsel in, among other cases, <u>Abzug, et ano. v. Kerkorian, et al</u>, in Superior Court, Los Angeles, California, and <u>Citron v. E.I. duPont de Nemours & Co.</u> in Delaware Chancery Court (co-trial counsel with a senior partner of the Firm) in which the Vice-Chancellor complimented counsel "for the able way in which they presented the case" and the "good job" done.

Ms. Avery was an annual contributor to the Survey of Securities Class Actions and Derivative Suits, American Bar Association, Litigation Section, Securities Litigation Committee, Subcommittee, from 1996 through 2001.  She is also the co-author of "To Stay or Not to Stay," Practicing Law Institute (1996); "Selection of Lead Plaintiff Under the Private Securities Litigation Reform Act of 1995," Practicing Law Institute (1996); as well as the co-author (or ghost writer) of a number of other articles on securities law practice and procedure published by the Practicing Law Institute;"The State Court Class Action--A Potpourri of Differences," The Forum, ABA, Vol. XX, No. 4, Summer 1985; and "Proving Damages in Non-Class Securities Cases," presented at the Commercial Law Section of the Association of Trial Lawyers of America annual convention, July l986.  She was admitted to the New York bar in January 1977, and is admitted to numerous Federal Courts around the country, including the United States Supreme Court, various U.S. Circuit Courts of Appeal (including the Second, Third, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits), the Southern and Eastern Districts of New York, the Northern District of Texas, and the Central District of Illinois.

**Robert C. Finkel** is a member of Wolf Popper LLP.  He graduated from Columbia Law School, Class of 1981 (where he was a Harlan Fiske Stone Scholar), and the Wharton School of Business of the University of Pennsylvania, Class of 1978, where he obtained a B.S. in accounting. Mr. Finkel has twenty years of experience in securities and corporate litigation, with an expertise in accountants' liability.  He is admitted to the New York State Bar, the Bar of the United States District Court, Southern and Eastern Districts of New York, Ninth Circuit Court of Appeals and the Tax Court of the United States.

Mr. Finkel was an active participant in Wolf Popper's representation of the plaintiff classes in:

- <u>In re Service Corp. International</u>, Case No. H-99-280 (S.D. Tex.) ($65 million recovery)

- <u>In re Providian Financial Securities Litigation</u>, MDL 1301 (E.D. Pa.) ($38 million recovery);

- <u>In re TCW/DW North American Government Income Trust</u>, 95 Civ. 0167 (PKL) (S.D.N.Y.) ($30 million settlement);

- <u>In re PictureTel Corp. Securities Litigation</u>, ($12 million settlement);

- <u>In re National TechTeam Securities Litigation</u>, Case No. 97-74587 (E.D. Mich.) ($11 million settlement);

- <u>In re Medical Resources, Inc. Securities Litigation</u>, No. 97-5531 (WHW) (D.N.J.) ($5.75 million cash and note settlement);

- <u>In re Donnkenny Securities Litigation</u>, 96-CV-8452 (MGC) (S.D.N.Y.) ($15 million cash and common stock proposed settlement);

- <u>Rand v. Lorimar Telepictures Corp.</u>, 88 Civ. 3179 (LLS) (S.D.N.Y.) (an open market securities fraud action which settled for $6 million) and

- <u>Feinberg v. Empire Blue Cross-Blue Shield</u>, 88 Civ. 2532 (RO) (S.D.N.Y.) (a class action for breach of an insurance contract which settled for $8,800,000).

Mr. Finkel was also instrumental in the representation of plaintiff classes in:

- <u>In re Medical Care America, Inc. Securities Litigation</u>, Civil Action No. 3-92-CV-1996-R (N.D. Tex.) ($60 million settlement);

- <u>In re Marion Merrell Dow Inc. Securities Litigation</u>, Master File No. 92-0609-CV-W-6 (W.D. Mo.) ($13.85 million settlement);

- <u>In re American Business Computers Corporation Securities Litigation</u>, Docket No. MDL 913 (CLB) (S.D.N.Y.) (settlement for cash and stock valued at $6.5 million);

- <u>Lerch v. Citizens First Bancorp, Inc.</u>, Civil Nos. 90-3538, 90-4404 (D.N.J.) ($4.9 million settlement);

- <u>In re Columbia Securities Litigation</u>, 89 Civ. 6821 (S.D.N.Y.) ($25 million settlement);

- <u>In re In-Store Advertising Securities Litigation</u>, Master File No. 90-CIV. 5594 (KC) (S.D.N.Y.) ($9.25 million settlement);

- <u>In re Ivan F. Boesky Securities Litigation</u>, M 21-45 (MP), MDL Dkt. No. 732 (S.D.N.Y.);

- <u>In re Triarc Companies, Inc. Class and Derivative Litigation</u>, Civil Action No. 15746-NC (Del. Ch.) (cash and stock option settlement having an estimated value of $11 million); and

- <u>In re The Drexel Burnham Lambert Group, Inc.</u>, Chapter 11 Case No. 90 B 10421 (FGC) (Bankr. S.D.N.Y.).

Among the reported decisions in which Mr. Finkel as appeared as counsel of record are:

- <u>In re Cephalon Securities Litigation</u>, [1998 Transfer Binder] Fed. Sec. L. Rep. 90,268 (E.D. Pa. Aug. 12, 1998) (granting class certification of a class broadly defined to include short sellers and option traders);

- <u>In re Anicom, Inc. Securities Litigation</u>, [Current Binder] Fed. Sec. L. Rep. 91,458 (N.D. Ill. May 15, 2001) (denying defendants' motion to dismiss the complaint).

- <u>In re TCW/DW North American Government Income Trust Securities Litigation</u>, 941 F. Supp. 326, 334 (S.D.N.Y. 1996); 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. 1997) (denying defendants' motion to dismiss and motions to reargue, and granting class certification);

- <u>In re Providian Financial Corporation Securities Litigation</u>, 52 F. Supp. 2d 826 (E.D. Pa. 2001) (denying defendants' motion to dismiss);

- <u>In re Donnkenny, Inc. Securities Litigation</u>, 171 F.R.D. 156 (S.D.N.Y. 1997) (appointing lead plaintiff);

- Chalverus v. Pegasystems, Inc., 59 F. Supp. 2d 26, 231 (D. Mass. 1999) (denying defendants' motion for summary judgment;

- In re Quintel Entertainment Securities Litigation, 72 F. Supp. 2d 283 (S.D.N.Y. 1999) (denying defendants' motion to dismiss).

Mr. Finkel's articles entitled "Investor Oversight Over the Issuance of Stock Options," and "Recovering Damages for the Decline In Company – Issued Securities Under ERISA" have been published in The New York Law Journal.  Mr. Finkel has lectured on securities law before the New York State Bar Association and the Practicing Law Institute.

**Chet B. Waldman**, born in the Bronx, New York, June 3, 1959, is a graduate of Cornell University (A.B. 1982) and Boston University School of Law (J.D., 1985), where he was both a G. Joseph Tauro Scholar and a Paul J. Liacos Scholar and was a member of the American Journal of Law and Medicine. He was admitted to the bar in 1986 for the State of New York, the United States District Court, Southern and Eastern Districts of New York in 1988, and the United States Court of Appeals for the Fifth Circuit on May 22, 2000. Following law school, he joined the New York office of Weil, Gotshal & Manges, where he was predominantly involved in antitrust litigation. Since 1988, Mr. Waldman has been at Wolf Popper where he has concentrated on federal and state securities class actions and derivative litigation. Mr. Waldman also has extensive experience in litigating healthcare and consumer fraud cases.  Mr. Waldman became a partner of the firm as of January 1, 1995. Mr. Waldman has been involved in litigating numerous multi-district and consolidated actions including some of the more prominent cases in which Wolf Popper has been involved. Among the cases litigated by Mr. Waldman are:

- In re Chambers Securities Litigation, C.A. NO. 92-0679 (W.D. Pa.);

- In re McDonnell Douglas Equipment Leasing Securities Litigation, MDL No. 873 (S.D.N.Y.);

- In re Salomon Inc. Securities Litigation, 91 Civ. 5442 (S.D.N.Y.);

- In re Coordinated Title Insurance Cases, Index No. 009600/03 (N.Y. Sup. Ct.);

- In re Loewen Group Inc. Securities Litigation, No. 98-6740 (E.D. Pa.).

Reported decisions recognizing Mr. Waldman as counsel include:

- In re Mutual Funds Investment Litig., 384 F. Supp. 2d 845 (D. Md. 2005);

- In re Loewen Group Inc. Sec. Litig., No. 98-6740, 2004 WL 1853137 (E.D. Pa. Aug. 18, 2004);

- In re Coordinated Title Insurance Cases, 784 N.Y.S.2d 919 (Sup. Ct. 2004);

- Blatt v. Muse Technologies, Inc., Fed. Sec. L. Rep. (CCH) ¶ 92,004 (D. Mass. Aug. 27, 2002);

- In re Sunbeam Sec. Litig., 89 F. Supp. 2d 1326 (S.D. Fla. 1999);

- In re WebSecure, Inc. Sec. Litig., [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,292 (D. Mass. Sept. 24, 1998);

- In re Employee Solutions Sec. Litig., [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,293 (D. Az. Sept. 22, 1998);

- Zuckerman v. FoxMeyer Health Corp., 4 F. Supp. 2d 618 (N.D. Tex. 1998);

- Blaich v. Employee Solutions, Inc., [1997-98 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,109 (D. Ariz. Nov. 21, 1997);

- Nager v. WebSecure, Inc., [1997-1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,111 (D. Mass. Nov. 26, 1997);

- Nager v. WebSecure, Inc., [1997-1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,112 (D. Mass. Nov. 26, 1997);

- In re JWP Inc. Sec. Litig., 928 F. Supp. 1239 (S.D.N.Y. 1996);

- Ann Taylor Stores Sec. Litig., [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,940 (S.D.N.Y. 1992);

- Herd v. Major Realty Corp., et al., [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,772 (Del. Ch. 1990).

**Emily Madoff** is a senior partner in Wolf Popper LLP. She is a graduate of Connecticut College (B.A., 1973), and Northeastern University School of Law (J.D., 1979). She is admitted to the Bars of the State of New York and the Commonwealth of Massachusetts and to the United States District Court for the Southern District of New York. Ms. Madoff became a partner in Wolf Popper in 1990.

Ms. Madoff practices in the area of general corporate law, and represents many international concerns including Aeroflot Russian Airlines and Zurab Tsereteli, President of the Russian Academy of Art, who is world renowned for his public works of art.  Ms. Madoff also has represented several missions to the United States. In recent years, Ms. Madoff has applied her corporate skills to consumer fraud and consumer financial services class action litigation. She has assisted in the prosecution of numerous consumer fraud class actions against, for example, American Bankers Insurance Company, Chase Bank, General Motors, PayPal and Concord EFS.

Ms. Madoff contributed frequently to the New York Law Journal.  Her articles published in that newspaper include: *Arbitration Clauses Lethal to Class Actions*, August 13, 2001; *E-Mail's Role in Hostile Work Environment,* August 23, 1999; *Freedom to Link Under Attack: Web Community Up in Arms Over Lawsuits*, June 23, 1997; and *Vendors Escape the "Tangled Web" of New York Forgery Laws*, December 15, 1995.

**Marshall G. Bennett**, after serving four elected terms as Treasurer of the State of Mississippi,  joined the Wolf Popper Law Firm in New York on July 1, 2003.

Mr. Bennett brings vast knowledge and experience of 16 years as the State's chief financial officer, directly managing $10.5 billion in public funds and $3 billion of bonded indebtedness, as well, as Trustee and Board Chairman of the $17 billion Public Employees Retirement System.

After graduating from the University of Mississippi School of Law in Oxford, Mississippi with a Juris Doctor degree, Marshall Bennett began a distinguished career in law and government. While in law school, Bennett served as Chairman of the Moot Court Board and a member of the Phi Kappa Phi legal honorary.  He received his BA Degree from the University of Mississippi -

Oxford, with a double major in history and political science.  He was elected to the Student Hall of Fame and was selected for Omicron Delta Kappa honorary leadership fraternity.  As a Commissioner Officer, Distinguished Military Graduate, Bennett served two years active duty with the US Army Military Intelligence Command (USAINTC), and 8 years in the US Army Reserve as a Captain in the Judge Advocate General's Corps.

Bennett began his legal and public service career as Assistant District Attorney, prosecuting felony cases in the State's capital city of Jackson and practiced law there with the firm of Peters, Royals and Bennett.  He then served for seven years, as State Assistant Attorney General, Chief of The Consumer Fraud Division, and the Organized Crime and Public Integrity Unit.  Bennett brought many cases to trial and successfully argued the case of first impression upholding the State's consumer protection laws before The Mississippi Supreme Court.  He filed antitrust actions to stop price fixing in the Ampicillin and Milk Dairy cases in the US District Court as well as the General Motors/Oldsmobile engine switch cases resulting in a national settlement of millions of dollars to US consumers.

Governor William Winter in 1980 appointed Bennett to serve as his first legislative assistant spearheading the reform of state government executive agencies and secondary education.

Bennett was later appointed by the Governor to a six year term as the Chairman and Commissioner of the Worker's Compensation Commission where Bennett eliminated a 1600 case backlog and instituted a statewide advisory council for workers comp reforms and improvements.  He began the first of 20 annual workers compensation legal and educational seminars.

During his terms as State Treasurer, Bennett helped establish and was director of the State Development Bank, the Mississippi Business Finance Corporation, the Mississippi Home Corporation, the State Bond Commission, and the State Economic Development Strategic Task Force.  He set up the first Section 529 College Savings Plan for tax free contributions and use for higher education costs.  He instituted the first, and now annual, Women's Money Conference, the Bank at School Program and the Unclaimed Property Scam Jam, all to provide financial literacy programs for citizens of the state.  These programs have been implemented now by most states across the nation.

As a national leader in public policy initiatives, Mr. Bennett has served as President of The National Association of State Treasurers, The National Association of State Auditors, Comptrollers and Treasurers, The National College Savings Network Association, the Southern State Treasurers Association, as well as on The Board of Directors of the National Unclaimed Property Administrators, the International Association of Industrial Accident Records and Commissions, the Council of State Governments and its Chair of Finance.

Mr. Bennett has authored many articles on financial responsibility and practices.  He has given testimony before the US House Ways and Means Committee and The US Senate Finance Committee regarding legislation affecting the federal tax laws and tax exemptions for citizens, as well as state and local governments.

In recognition of his services to his nation, state and community, Marshall Bennett was selected for the nation's most outstanding Treasurer Award in 1998, the NASACT Distinguished Service Award in 1999, the College Distinguished Service Award in 2002, the National Significant Sig Award in 2002, and The Distinguished American Award from The National Football All-American Foundation in 2003.

He has taught at Mississippi College School of Law in Jackson for 2 years as Adjunct Professor.  He is admitted to practice before the United States Supreme Court, the U.S. District Court - SDMS, the US Fifth Circuit Court of Appeals, The Mississippi Supreme Court and all State Trial Courts.  He is a member of the Mississippi Bar.  He taught at The National Public Finance Institute at Northwestern University, Evanston, Illinois for 5 years.  He was active in The National Society to Prevent Blindness, having served as Vice President of the National Board, and in the American Legion.

Mr. Bennett was born in Lexington, Mississippi and is the father of three children and resides in New York City and Jackson, Mississippi.


**Carl L. Stine** is a graduate of Fordham University School of Law (J.D., 1989) where he was the Editor in Chief of the Fordham International Law Journal.

Prior to joining Wolf Popper LLP, Mr. Stine was a litigation associate with the law firm Willkie Farr & Gallagher.  Since joining Wolf Popper in June of 1995, Mr. Stine has participated in the prosecution of securities class actions such as against Leslie Fay Co., Caremark, Inc., Archer Daniels Midland Co., and Sunbeam Corp.  He has been involved in merger and acquisition litigation challenging transactions involving ftd.com, Genencor International, Inc., Uni-Marts, Inc., Nassda Corp., William Lyon Homes, and Net2Phone, Inc.  He has also been involved in consumer fraud class actions against, for example, NYNEX, Chase Manhattan Mortgage Corp., H.I.P. of Greater New York, Sprint PCS, and Express Scripts, Inc.

Reported decisions recognizing Mr. Stine as counsel include:

- In re Seitel, Inc. Securities Litigation, 447 F. Supp. 2d 693 (S.D. Tex. 2006);

- Yang v. Odom, 2005 U.S. Dist. LEXIS 18089 (D.N.J., Aug. 19, 2005);

- Yang v. Odom, 392 F.3d 97 (3d Cir. 2004);

- In re Sunbeam Securities Litigation, 176 F. Supp. 2d 1323 (S.D. Fla. 2002);

- In re U.S. Liquids Securities Litigation, 2002 U.S. Dist. LEXIS 26713 (S.D. Tex 2002);

- Blatt v. Muse Technologies, Inc., 2002 U.S. Dist. LEXIS 18466 (D. Mass. 2002);

- In re Sunbeam Securities Litigation, 261 B.R. 534 (S.D. Fla. 2001);

- Collmer v. U.S. Liquids, Inc., 2001 U.S. Dist. LEXIS 23518 (S.D. Tex. 2001);

- In re World Access, Inc. Securities Litigation, 119 F. Supp. 2d 1348 (N.D. Ga. 2000);

- In re Sunbeam Securities Litigation, 89 F. Supp. 2d 1326 (S.D. Fla. 1999);

- Taylor v. American Bankers Ins.Group, Inc., 267 A.D.2d 178, 700 N.Y.S.2d 458 (1st Dep't 1999);

- In re WebSecure, Inc. Securities Litigation, [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,292 (D. Mass. 1998);

- Tanzer v. Health Insurance Plan of Greater New York, 238 A.D.2d 109, 655 N.Y.S.2d 493 (N.Y. App. Div. 1st Dep't), rev'd, 91 N.Y.2d 850 (1997);

- In re Caremark International, Inc. Securities Litigation, 1997 U.S. Dist. LEXIS 10948 (N.D. Ill. 1997);

- Lerner v. Tele-Communications, Inc., 215 A.D.2d 731, 627 N.Y.S.2D 733 (N.Y. App. Div. 2d Dep't 1995);

- Sheerbonnet, Ltd. v. American Express Bank Ltd., 17 F.3d 46 (2d Cir. 1994).

Mr. Stine currently serves as the Chairman of the Board of Appeals of Thomaston, New York, and is admitted to the New York State Bar and the Bars of the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Michigan, the Third Circuit Court of Appeals, and the United States Supreme Court.

Mr. Stine became a partner at Wolf Popper on January 1, 2002.

**Andrew E. Lencyk** was graduated magna cum laude from Fordham College, New York, in 1988 with a B.A. in Economics and History. At Fordham, he was a member of the College's Honors Program, and was elected to Phi Beta Kappa. He is multi-lingual, speaking Ukrainian, French, Polish, and Russian. Mr. Lencyk received his J.D. from Fordham University School of Law in 1992, where he was a member of the Fordham Urban Law Journal. Following graduation he joined Wolf Popper LLP and has been practicing securities litigation for over ten years.

Mr. Lencyk has co-authored, with Marian P. Rosner, the following articles for the Practicing Law Institute's Accountants' Liability Handbooks: "Liability in Forecast and Projection Engagements: Impact of Luce v. Edelstein"; "An Accountant's Duty to Disclose Internal Control Weaknesses"; "Whistle-blowing: An Accountants' Duty to Disclose A Client's Illegal Acts"; "Pleading Motions under the Private Securities Litigation Reform Act of 1995"; co-authored, with Stephen D. Oestreich, an article entitled, "Safe Harbor Provisions for Forward-Looking Statements," published by the Association of the Bar of the City of New York, Corporate & Securities Law Updates, Vol. II, May 12, 2000; and co-authored, with Marian P. Rosner, an article entitled, "Discovery Issues in Cases Involving Auditors," appearing in the 2002 PLI Handbook on "Accountants' Liability After Enron."

Cases in which Mr. Lencyk actively represented plaintiffs where Wolf Popper was lead, co-lead, or executive committee counsel include:

- In re Community Psychiatric Centers Sec. Litig., SA CV-91-533-AHS (Eex) (C.D. Cal.);

- McGann v. Ernst & Young, SA CV-93-0814-AHS (Eex) (C.D. Cal.) (total class recovery of $54.5 million against company and its outside auditors);

- In re Danskin Sec. Litig., Master File No. 92 CIV. 8753 (JSM) (S.D.N.Y.) (class recovery of approximately $3 million);

- In re JWP Sec. Litig., Master File No. 92 Civ. 5815 (WCC) (S.D.N.Y.) (class recovery of approximately $36 million);

- In re Porta Systems Sec. Litig., Master File No. 93 Civ. 1453 (TCP) (E.D.N.Y.) (class recovery of $3.25 million plus 1.1. million shares of common stock);

- <u>In re Leslie Fay Cos. Sec. Litig.</u>, No. 92 Civ. 8036 (S.D.N.Y.) ($35 million settlement);

- <u>Berke v. Presstek, Inc.</u>, Civ. No. 96-347-M (MDL Docket No. 1140) (D.N.H.) (class recovery of $22 million in stock);

- <u>In re Micro Focus Sec. Litig.</u>, No. C-01-01352-SBA-WDB (N.D. Cal.) ($4.25 million settlement);

- (<u>Dusek v. Mattel, Inc., et al.</u>, CV99-10864 MRP (C.D. Cal.)), which resulted in a $122 million global settlement.

Court decisions in which Mr. Lencyk played an active role on behalf of plaintiffs include:

- <u>In re Mutual Funds Investment Litigation</u>, 384 F. Supp. 2d 845 (D. Md. 2005) (MDL No. 1586) (denying in substantial part defendants' motions to dismiss), and <u>In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner</u>, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md. Nov. 3, 2005) (denying in substantial part defendants' motions to dismiss);

- <u>Dusek v. Mattel, Inc., et al.</u>, CV99-10864 MRP (C.D. Cal. Dec. 17, 2001) (denying defendants' motions to dismiss Section 14(a) complaint in their entirety);

- <u>In re Micro Focus Sec. Litig.</u>, Case No. C-00-20055 SW (N.D. Cal. Dec. 20, 2000) (denying motion to dismiss Section 11 complaint);

- <u>Zuckerman v. FoxMeyer Health Corp.</u>, 4 F. Supp. 2d 618 (N.D. Tex. 1998) (denying defendants' motion to dismiss in its entirety in one of the first cases decided in the Fifth Circuit under the Private Securities Litigation Reform Act of 1995);

- <u>In re U.S. Liquids Sec. Litig.</u>, Master File No. H-99-2785 (S.D. Tex. Jan. 23, 2001) (denying motion to dismiss Section 11 claims);

- <u>Sands Point Partners, L.P., et al. v. Pediatrix Medical Group, Inc., et al.</u>, Case No. 99-6181-CIV-Zloch (S.D. Fla. Jun. 6, 2000) (denying defendants' motion to dismiss in its entirety);

- <u>Berke v. Presstek, Inc.</u>, Civ. No. 96-347-M (MDL Docket No. 1140) (D.N.H. Mar. 30, 1999) (denying defendants' motion to dismiss);

- <u>Chalverus v. Pegasystems, Inc.</u>, 59 F. Supp. 2d 226 (D. Mass. 1999) (denying defendants' motion to dismiss);

- <u>Danis v. USN Communications, Inc.</u>, 73 F. Supp. 2d 923 (N.D. Ill. 1999) (denying defendants' motion to dismiss in case ultimately resulting in class recovery of $44.7 million);

- <u>In re JWP Inc. Sec. Litig.</u>, 928 F. Supp. 1239 (S.D.N.Y. 1996) (denying defendants' motion for summary judgment);

- <u>In re Danskin Sec. Litig.</u>, Master File No. 92 CIV. 8753 (JSM) (S.D.N.Y. Feb. 23, 1994) (denying corporate and underwriter defendants' motions to dismiss in all respects);

- <u>In re UCAR International Inc., Sec. Litig.</u>, No. 3:98cv600 (JBA) (D. Conn.) (case settled for $40 million during pendency of defendants' motion to dismiss).

He is admitted to the Bar in Connecticut and New York.  Mr. Lencyk became a partner at Wolf Popper effective January 1, 2003.

**Michele Fried Raphael** is a partner at Wolf Popper LLP.  She is a graduate of Hofstra University School of Law (J.D. with distinction 1993) where she was a member of the Hofstra Law Review (1991-1993), a student member of the Theodore Roosevelt American Inn of Court, and an intern for the Honorable Judge George C. Pratt on the United States Court of Appeals for the Second Circuit. She holds a B.A. from the State University of New York at Binghamton (1990), where she was elected into Phi Beta Kappa.  Following law school she joined Tenzer Greenblatt Fallon & Kaplan where she was involved in both litigation and corporate matters.

Since joining Wolf Popper in 1995, Ms. Raphael has actively represented plaintiffs in consumer fraud class actions including <u>Kahn v. Bell Atlantic NYNEX Mobile</u>, Index No. 96/603445  (Supreme Court, New York County) (J. Kahn) (defendant terminated its practice of charging early termination fee after it unilaterally renewed cellular phone contracts) and <u>Taylor v. American Bankers Insurance Group, Inc.</u>, Index No. 96/602485 (Supreme Court, New York County) (J. Gammerman) (defendant to pay all class members' claims in full and revise its solicitations).  She recently secured a unanimous decision by the Appellate Division, First Department, reversing the lower court and upholding a class action complaint on behalf of credit cardholders alleging that they had not been properly advised of the fees incident to card ownership. <u>Sims v. First Consumers Nat'l Bank</u>, 758 N.Y.S.2d 284, 2003 N.Y. App. Div. LEXIS 3199 (1st Dep't 2003).

Ms. Raphael has also represented plaintiffs in securities fraud class actions and derivative actions. She was one of the principal attorneys representing the class of investors in  <u>Buxbaum v. Deutsche Bank</u>, 98 Civ. 8460 (S.D.N.Y.) (JGK), a securities action arising from the merger of Bankers Trust and Deutsche Bank, wherein a $58 million recovery was obtained on the eve of trial, representing approximately 96% of the class's most likely recovery.  Other cases she was principally involved in include, <u>Schnipper v. CompuServe Corp.</u>, 96 CV H08-5837 (JPB) (Court of Common Pleas, Franklin County, Ohio) (open market securities fraud action); <u>In Re Triarc Companies, Inc. Class and Derivative Litigation</u>, Consolidated C.A. No. 15746-NC (Court of Chancery in and for New Castle County, Delaware), (derivative and class claims arising from alleged improper executive compensation).
Ms. Raphael is also actively involved in general commercial litigation and represents Aeroflot Russian Airline in a variety of matters.

Ms. Raphael is admitted to the New York State Bar, the New Jersey State Bar, and the Bar of the United States District Court, Southern and Eastern Districts of New York.

**Michael Adam Schwartz** is a partner at Wolf Popper LLP.  He is a 1988 graduate of Brooklyn College (City University of New York) where he received a B.S. *cum laude* in business management and finance. After graduating Brooklyn Law School in 1992, where he earned a Dean's Merit Scholarship, he has concentrated on securities and antitrust class action litigation and shareholder derivative litigation. In 1993, he was admitted to the bars of the State of New York and

the United States District Court for the Southern District of New York, and in 1999, the United States Court of Appeals for the Third Circuit.

Mr. Schwartz' accomplishments include <u>Danis v. USN Communications, Inc. Et al.</u>, 98 C 7482 (SBC), a securities fraud class action brought against USN Communications, a start-up telecommunications company which went bankrupt within twelve months of its initial public offering.  After years of contentious litigation in the United States District Court for the Northern District of Illinois and the United States Bankruptcy Court for the District of Delaware, Mr. Schwartz and his co-counsel were able to negotiate a $44.7 million settlement for the Class, which resulted in a cash payout to the Class of 36% of its provable damages.

Mr. Schwartz was counsel to the Seat Owners of the American Stock Exchange (the "AMEX") in connection with the 1999 merger of the National Association of Securities Dealers, Inc. and the AMEX (<u>Philipson v. American Stock Exchange,, et al.</u>, 99 Civ. 4219 (DC)).  As a result of the settlement of the <u>Philipson</u> Action, the AMEX Seat Owners received a cash payout of $30.5 million and the right to participate in the profits of the AMEX over a ten year period.  In approving the 2004 settlement of the <u>Philipson</u> Action, Judge Chin of the United States District Court for the Southern District of New York stated that, "The Settlement was negotiated with highly experienced, highly competent counsel on both sides."

In <u>In re Select Comfort Corp. Securities Litigation</u>, Civil No. 99-884 (D. Minn.), Mr. Schwartz was co-lead counsel on behalf of a plaintiff class in an action arising out of an initial public offering of common stock.  The settlement achieved in that action resulted in the Class receiving a cash payout of over 30% of its provable damages.

Mr. Schwartz joined Wolf Popper LLP in 1998 and became a partner in 2003.  He began his law career at Pomerantz Haudek Block & Grossman as an Associate practicing in securities and antitrust class action litigation and shareholder derivative litigation.

**James A. Harrod** is an associate at Wolf Popper LLP. He received his J.D. from the George Washington University Law School. Mr. Harrod has interned at the National Whistleblower Center and worked in the Office of the General Counsel at the Pension Benefit Guaranty Corporation. A graduate of Skidmore College, Mr. Harrod earned a B.A. in Philosophy and Government.

Since joining Wolf Popper Mr. Harrod has focused on representing shareholders in securities litigation and corporate transactional litigation. He was actively involved in Wolf Popper's successful representation of the plaintiff class in Danis v. USN Communications, Inc., 98 C 7412 (N.D. Ill.), a federal securities class action which resulted in a $44.7 million settlement on behalf of the class of USN shareholders.

Mr. Harrod is admitted to the bar of the State of New York and is admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York. He is a member of the New York State Bar Association, the American Bar Association and the Association of the Bar of the City of New York.

**James Kelly-Kowlowitz** is an associate at Wolf Popper. He is a *summa cum laude* graduate of Brooklyn Law School, where he received the CALI Award for Excellence in Securities Regulation. Mr. Kelly-Kowlowitz obtained a B.S. in Accounting from the State University of New

York at Binghamton, where he was a member of Beta Alpha Psi, National Honor Society. During law school, Mr. Kelly-Kowlowitz interned for the Honorable Allan L. Gropper at the U.S. Bankruptcy Court, S.D.N.Y., and interned for the New York City Department of Finance, Office of Legal Affairs. Mr. Kelly-Kowlowitz is also a Certified Public Accountant with extensive knowledge of accounting and financial reporting.

Mr. Kelly-Kowlowitz is admitted to the bar of the State of New York.

**E. Elizabeth Ferguson** is an associate at Wolf Popper LLP.  She is a graduate of Louisiana State University (B.S. Accounting and Finance, 1999) and University of Mississippi School of Law (J.D. cum laude 2004).  Before beginning law school, Ms. Ferguson worked in the commercial Audit Division of Arthur Anderson, LLP.  She is a Certified Public Accountant registered in the State of Texas and is admitted to the Bar of the State of New York.

**Danielle Disporto** is an associate at Wolf Popper LLP. She is a graduate of the University of Delaware (B.S. Business Administration with a major in Finance, 1998) and Seton Hall University School of Law, cum laude (J.D. 2003). Before starting law school, Ms. Disporto worked as a financial analyst with Prudential Healthcare in Roseland, New Jersey. Prior to joining Wolf Popper, Ms. Disporto was an associate with Schwartz, Simon, Edelstein, Celso & Kessler, LLP in Florham Park, New Jersey.

Ms. Disporto is admitted to the bars of the State of New York, State of New Jersey and District Court of New Jersey.

**Natalie Mackiel Jackson** is an associate at Wolf Popper LLP. She is a graduate of Indiana University  Bloomington (B.S. in Business Management and International Studies, 2002) and the University of Nebraska College of Law, with distinction (J.D. 2005). She was an Executive Editor of the Nebraska Law Review (2003-2005) and authored "Walking the Straight and Narrow: Another Squeeze on Tribal Civil Jurisdiction over Nonmembers in Smith v. Salish Kootenai College, 83 NEB LAW REV 1325 (2005). Prior to joining Wolf Popper, Ms. Mackiel practiced corporate law in Omaha, Nebraska.

**Anthony D. Green** is an associate at Wolf Popper LLP. He is a graduate of Rutgers University (B.A. with majors in History and Philosophy, 2002) and Brooklyn Law School (J.D., cum laude, 2005). During law school, he interned for the New York Stock Exchange - Division of Enforcement. Prior to joining Wolf Popper, Mr. Green practiced commercial litigation in New York, New York.

Mr. Green is admitted to the bars of the State of New York, State of New Jersey, and United States District Court for the District of New Jersey. He is a member of the New York County Lawyers' Association, the American Bar Association, the New Jersey State Bar Association, and the New York State Bar Association.

**Robert Plosky** is an associate at Wolf Popper LLP. He is a graduate of Tufts University (B.A. Economics, magna cum laude, 2003) and The George Washington University School of Law (J.D., with honors, 2006). During law school, Mr. Plosky interned at the Queens County Criminal Court and the Queens County District Attorney's Office. Prior to joining Wolf Popper LLP, Mr. Plosky clerked for the Honorable Senior Judges at the Superior Court for the District of Columbia.

Mr. Plosky is admitted to the Bar of the State of New York.